[Cite as *Sourial v. Nationwide Mut. Ins. Co.*, 2018-Ohio-2528.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| Samir Sourial, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 17AP-731 |
| v. | : | (C.P.C. No. 16CVH-6024) |
| Nationwide Mutual Insurance Company, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 28, 2018

**On brief:** *Caryn Groedel & Associates, Co., LPA, Matthew S. Grimsley*, and *Caryn M. Groedel*, for appellant. **Argued:** *Matthew S. Grimsley*.

**On brief:** *Bricker & Eckler LLP, Quintin F. Lindsmith*, and *Ali I. Haque*, for appellee. **Argued:** *Ali I. Haque*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Samir Sourial, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Nationwide Mutual Insurance Company ("Nationwide"). For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In June 2008, Sourial was employed as an insurance agent for AAA Insurance when he was approached by Nationwide with an opportunity to join one of its agency programs. Sourial met with Nationwide Sales Manager Brad Bohn who encouraged Sourial to participate in Nationwide's Agency Capital Builder ("ACB") program, where he would receive training necessary for him to successfully operate a Nationwide Insurance

Agency. According to Sourial, Bohn told him that when he successfully completed the ACB program, Nationwide would sell him an established book of business which would generate approximately $350,000 per year in revenue. Sourial left his position with AAA to join Nationwide's ACB program.

{¶ 3} Sourial consistently met the ACB program production requirements as measured by Direct Written Premium ("DWP"). Sourial eventually became one of the top producing employees in the ACB program for the region and the first to graduate the program. On his graduation, Nationwide paid Sourial compensation in the amount of $75,000. Sourial intended to purchase a book of business and become a member of Nationwide's Replacement Agency Executive ("RAE") program. Sourial claims he repeatedly inquired of Bohn and his successor sales manager, Diana Graovac, about an available book of business to purchase. According to Sourial, Bohn falsely represented to him that no existing book of business was available for purchase and that Sourial would have to join the Account Executive ("AE") program, rather than the RAE program.

{¶ 4} Sourial claims various Nationwide vice presidents and sales managers induced him to join the AE program by making false representations regarding his potential for success. In Sourial's affidavit filed in connection with his Civ.R. 56(F) motion, Sourial claims Nationwide management falsely represented the following:

> [M]isrepresentations about the amount of money I would earn, that my pro forma and business plan were legitimate and accurate representations of what Nationwide expected my agency to earn, that Agency Executive Program agents easily meet their production requirements and complete the Program, that I would easily meet my Agency Executive Program production requirements, that if I acquired an existing book of business Nationwide would transfer me into the Replacement Agency Executive Program, that I would own my book of business and the books of business I acquired, and that if I ever left Nationwide, it would offer to purchase my book of business and the books of business I acquired.

(Aug. 30, 2017 Sourial Aff. at ¶ 7.)

{¶ 5} Sourial executed the AE agreement in June 2010. Prior to signing the agreement, Sourial had spent several months reviewing the draft agreement as well as developing a pro forma business plan. The AE agreement required Sourial to meet a

minimum production plan ("MPP"), as measured by DWP.[1]  The AE agreement also contained the following provision:

> It is agreed that no action, suit, proceeding at law or in equity shall be brought under this contract unless it is commenced and process is served within three years after the cause of action for which suit is brought.

(AE Agreement at ¶ 35.)

{¶ 6}   In addition to the contractual limitations period, the AE agreement contained an integration clause as follows: "The terms and conditions contained in this Agreement supersede all prior oral or written understandings between Agent and Nationwide and constitute the entire agreement between them concerning the subject matter of this Agreement." (AE Agreement at ¶ 38.)

{¶ 7}   On April 5, 2011, Sourial executed an amended AE agreement containing the following language: "By signing this Amendment, [Sourial] * * * waives all claims that he/she has or may have against Nationwide * * * as of the date of his/her execution of this Amendment."  (Amendment to AE Agreement at 1.)  The stated consideration for the release was an enhanced bonus schedule as set forth in the amendment.

{¶ 8}   On May 3, 2011, Sourial received a loan from Nationwide Bank, the proceeds of which Sourial used to purchase an existing book of business.  According to Sourial, Graovac subsequently informed him the book of business he purchased was too small to allow him to transition into the RAE program, and the renewal DWP from the newly purchased book of business could not be counted towards his MPP for purposes of the AE program.  Sourial claims he was falsely informed that there was not another existing book of business available for purchase.

{¶ 9}   In May 2012, Nationwide put Sourial on the production shortfall list because he had not met his MPP.  According to Sourial, in the subsequent months, Nationwide transferred some of his existing book of business to another agent, which caused Sourial to fall further behind his MPP.  Realizing his contract was subject to cancellation, on December 3, 2012, Sourial resigned his position with Nationwide.  There is no dispute Nationwide subsequently made an early cancellation payment to Sourial of more than

---

[1] The number of policies in force and life sales were also considered.

$130,000. According to Sourial, however, Nationwide took over his existing book of business worth approximately $1,300,000.

{¶ 10} On June 24, 2016, Sourial filed a complaint alleging the following claims for relief against Nationwide: fraudulent inducement in relation to the Career Builder Contract; fraudulent inducement in relation to the Executive Contract; intentional misrepresentation in relation to the Career Builder Contract and the Executive Contract; breach of the Career Builder Contract; breach of the Executive Contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; unjust enrichment; national origin based discrimination; and national origin based harassment.

{¶ 11} On January 10, 2017, the trial court granted Nationwide's motion for judgment on the pleadings as to the claims for discrimination based on national origin and harassment. In so doing, the trial court noted in its decision that "in relation to all of [Sourial's] claims, except that for breach of the Executive Contract, Indiana substantive law shall apply. As to procedural law, Ohio law still applies to this matter." (Jan. 10, 2017 Decision at 3.) No appeal was taken from the trial court decision granting Nationwide's motion for judgment on the pleadings.

{¶ 12} On June 19, 2017, Sourial filed a motion to compel discovery wherein Sourial sought, among other things, production of unredacted copies of the following documents: New Agent Program Scorecards; Production Shortfall Reports; Program Agent Management Reports; and Program Agent Production Status Reports. Sourial claimed the information in these documents provided evidentiary support for his fraud claims. On July 19, 2017, Sourial filed a motion to vacate the case schedule or, in the alternative, enlarge the case schedule 60 days from the date the trial court ruled on Sourial's motion to compel.

{¶ 13} On July 28, 2017, Nationwide filed a motion for summary judgment as to Sourial's remaining claims. In support of the motion, Nationwide filed excerpts from the transcript of Sourial's deposition along with a large number of documents identified as exhibits therein.[2] On August 4, 2017, the trial court issued a decision denying Sourial's

---

[2] Nationwide filed the complete deposition transcript and additional exhibits on August 10, 2017.

motion to compel and denying Sourial's motion to enlarge the case schedule.  The trial court decision provides, in relevant part, as follows:

> There is not much to say in regards to [Sourial's] motion.  In it, [Sourial] asks the Court to issue an order compelling [Nationwide] to supplement numerous discovery responses. After reviewing this matter thoroughly, the Court is not inclined to grant [Sourial's] request.  First, it is clear that [Nationwide] has rectified many of the issues that [Sourial] had since the filing of this motion.  Second, [Sourial] has stated inadequate grounds upon which the Court would base an order compelling discovery.  Since this is so, the Court finds [Sourial's] Motion to Compel to be not well-taken, and is hereby DENIED.

(Emphasis sic.)  (Aug. 4, 2017 Decision at 1.)

{¶ 14}  On August 11, 2017, Sourial filed a combined motion to reconsider the trial court's August 4, 2017 decision denying Sourial's motion to compel and motion for an in camera inspection of the documents Nationwide had either refused to produce or redacted. On that same date, Sourial filed a Civ.R. 56(F) motion for a continuance to permit further discovery essential to Sourial's opposition to Nationwide's motion for summary judgment. Sourial did not, however, file a response to the motion for summary judgment.

{¶ 15}  On September 6, 2017, the trial court denied Sourial's Civ.R. 56(F) motion:

> Once again [Sourial] asks the Court for more time due to a discovery dispute.  In this motion, however, [Sourial] asks for more time due to a discovery dispute that [Sourial] previously lost.  The Court is not going to grant [Sourial] any additional time to file a response to [Nationwide's] Motion for Summary Judgment.  Due to the fact that [Sourial] has not filed a response to [Nationwide's] Motion for Summary Judgment within the time limit prescribed by rule, the Court will rule upon said motion sans response.

(Sept. 6, 2017 Decision at 2.)

{¶ 16}  On September 14, 2017, the trial court issued a decision and judgment entry granting Nationwide's motion for summary judgment as to Sourial's remaining claims.  The trial court determined Sourial's claims for breach of contract were barred both by the contractual limitations period and the release.  The trial court also determined the existence of a written agreement containing an integration clause and the release barred Sourial's

quasi-contract claims for promissory estoppel and unjust enrichment. Finally, the trial court found the release barred Sourial's fraud claims. Accordingly, the trial court determined Nationwide was entitled to a judgment on these claims as a matter of law.

{¶ 17} Sourial timely appealed to this court from the following trial court judgments: August 4, 2017 decision and entry denying Sourial's motion to compel and motion to vacate or enlarge the case schedule; September 6, 2017 decision and entry denying Sourial's motion for reconsideration, request for in camera inspection, and Civ.R. 56(F) motion; and the judgment entry issued September 14, 2017 granting Nationwide's motion for summary judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Sourial sets forth the following eleven assignments of error:

[1.] The trial court erred and abused its discretion by denying Sourial's motion to compel in its entirety and effectively condoning Nationwide's impermissible redaction campaign.

[2.] The trial court abused its discretion by failing to compel Nationwide to un-redact and produce vital statistical data reflecting the failure rate of its AE Program agents.

[3.] The trial court erred by failing to compel Nationwide to Answer Interrogatory 1, which seeks the identity of person(s) responding to Interrogatories.

[4.] The trial court abused its discretion by failing to compel Nationwide to respond to Interrogatories seeking information pertaining to other program agents.

[5.] The trial court abused its discretion by failing to compel Nationwide to provide information pertaining to similar action brought against it.

[6.] The trial court abused its discretion in failing to compel Nationwide to respond to Interrogatories seeking information pertaining to its decision not to offer Sourial a position in the RAE Program.

[7.] The trial court abused its discretion by failing to compel Nationwide to produce compensation and performance-related documents for Sourial's Sales Managers and VPs.

[8.] The trial court abused its discretion by failing to compel Nationwide to produce discovery pertaining to books of business that became available in Sourial's district between January 2010 and December 2012.

[9.] The trial court erred by failing to compel Nationwide to Answer Interrogatories 26, 27, 28, and 29.

[10.] The trial court abused its discretion in denying Sourial's motion to vacate or enlarge the case schedule pending its ruling on Sourial's previously filed motion to compel.

[11.] The trial court abused its discretion in denying Sourial's Rule 56(F) motion and entering summary judgment in favor of Nationwide without given [sic] Sourial a full and fair opportunity to complete discovery and obtain the evidence he needs to adequately oppose Nationwide's motion for summary judgment.

## III. STANDARD OF REVIEW

{¶ 19} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Phillips v. Wilkinson*, 10th Dist. No. 17AP-231, 2017-Ohio-8505, ¶ 11, citing *Byrd* at ¶ 6, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 20} " '[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element

of the nonmoving party's claim.' " *Byrd* at ¶ 7, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial." *Phillips* at ¶ 12, citing *Byrd* at ¶ 7, citing *Dresher* at 293.

## IV. LEGAL ANALYSIS

### A. Sourial's Eleventh Assignment of Error

{¶ 21} Because we find our resolution of Sourial's eleventh assignment of error is dispositive of this appeal, we shall consider it first. As noted above, the trial court determined Sourial's claims for breach of contract were barred both by the contractual limitations period and the release. The trial court also determined the existence of a written agreement containing an integration clause and the release barred Sourial's quasi-contract claims for promissory estoppel and unjust enrichment. Finally, the trial court found the release barred Sourial's fraud claims. In granting summary judgment for Nationwide, the trial court determined various contractual defenses asserted by Nationwide barred all Sourial's claims for relief as a matter of law.

{¶ 22} The parties disagree on whether Sourial's eleventh assignment of error challenges the granting of summary judgment or merely whether the trial court erred when it granted summary judgment for Nationwide without providing Sourial with a full and fair opportunity to conduct discovery. We perceive the eleventh assignment of error to be both.

{¶ 23} Even though Sourial did not respond to Nationwide's motion for summary judgment, there is no default summary judgment in Ohio. *Cook v. Wilson*, 165 Ohio App.3d 202, 2006-Ohio-234 (10th Dist.); *Owensby v. Fresenius Dialysis Unit*, 10th Dist. No. 04AP-1382, 2005-Ohio-6467, ¶ 17; *Maust v. Palmer*, 94 Ohio App.3d 764, 769 (10th Dist.1994). An appellate court must proceed to analyze the merits of summary judgment, de novo, and examine all appropriate evidentiary materials filed by the parties even when the motion is unchallenged. *Owensby* at ¶ 17, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). Therefore, before we analyze the merits of Sourial's appeal from the denial of his Civ.R. 56(F) motion, we must first consider whether there is evidence in the record on which it could be reasonably concluded that Sourial's claims survive Nationwide's contractual defenses. Accordingly, we first address each of Nationwide's defenses on which it was granted summary judgment by the trial court.

### 1. Breach of Contract

{¶ 24} In Count 4 of his complaint, Sourial alleges that Nationwide materially breached the ACB agreement by failing to provide Sourial with "training and guidance, refusing to allow [Sourial] to exercise discretion and independent judgment with respect to his marketing and sales activity, and prohibiting him from binding certain policies." (Compl. at ¶ 74.) Sourial's complaint alleges that Nationwide breached the provisions of the AE agreement in the following manner: failing to make available to its agents reports, progressive counseling, and other types of services designed to assist agents who are not meeting the requirements of the administrative MPP; refusing to allow Sourial to exercise discretion and independent judgment with respect to his marketing and sales activity; and failing to provide Sourial with training, mentoring, guidance, or support. Sourial's complaint does not identify the particular provisions of the agreements at issue.

{¶ 25} Both the ACB agreement and the AE agreement executed by the parties contain the following provision:

> **Legal Action Under This Agreement**. It is agreed that no action, suit, proceeding at law or equity shall be brought under this contract unless it is commenced and process is served within three (3) years after the cause of action for which suit is brought.

(Emphasis sic.) (ACB Agreement at ¶ 35; AE Agreement at ¶ 35.)

{¶ 26} In *Barbee v. Nationwide Mut. Ins. Co.*, 130 Ohio St.3d 96, 2011-Ohio-4914, the Supreme Court of Ohio discussed the enforceability of a contractual limitations period as follows:

> "In Ohio, the statutory limitation period for a written contract is 15 years. R.C. 2305.06. However, the parties to a contract may validly limit the time for bringing an action on a contract to a period that is shorter than the general statute of limitations for a written contract, as long as the shorter period is a reasonable one." *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St.3d 403, 2005-Ohio-5410, 835 N.E.2d 692, ¶ 11, citing *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 624, 1994-Ohio-160, 635 N.E.2d 317 and *Colvin v. Globe Am. Cas. Co.* (1982), 69 Ohio St.2d 293, 295, 23 O.O.3d 281, 432 N.E.2d 167, overruled on other grounds by *Miller*. "A contract provision that reduces the time provided in the statute of

limitations must be in words that are clear and unambiguous to the policyholder." *Id.*, citing *Colvin* at 296.

*Id.* at ¶ 23.

{¶ 27} Nationwide relies on Sourial's deposition testimony in support of its contention that Sourial's claims for breach of the ACB agreement and the AE agreement are time-barred. Nationwide points to certain admissions made by Sourial during his deposition testimony to the effect that any wrongful conduct by Nationwide, as alleged in the complaint, occurred prior to February 2011. Accordingly, Nationwide argues that Sourial's claims for breach of contract accrued more than five years before he filed his complaint on June 24, 2016.

{¶ 28} Nationwide's argument notwithstanding, we note there is no dispute in this case that Sourial completed the ACB program in 2010 and that Nationwide cancelled the AE agreement in December 2012. Sourial has presented no evidence to support an issue of fact regarding an ongoing breach by Nationwide of any provision of either the ACB agreement or the AE agreement. Because Sourial did not file his complaint in this matter until June 24, 2016, more than three years after Nationwide cancelled the AE agreement, the contractual limitations period bars Sourial's breach of contract claims as a matter of law. Accordingly, we hold the trial court did not err when it granted Nationwide's motion for summary judgment as to the contract claims.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

{¶ 29} In his complaint, Sourial alleges Nationwide violated an implied covenant of good faith and fair dealing by "engaging in conduct that conferred an undue economic advantage upon it that was not contemplated by both Nationwide and [Sourial] at the time of contracting, including: repeatedly lying to [Sourial]; devising unrealistic and unsustainable production quotas for [Sourial], which Nationwide used to deny [Sourial] his earned commissions and bonus; manipulating [Sourial's] production reports; intentionally interfering with [Sourial's] ability to meet production requirements; and co-opting the book of business [Sourial] had built." (Compl. at ¶ 86.)

{¶ 30} "In addition to a contract's express terms, every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, ¶ 42, citing Restatement of

the Law 2d, Contracts, Section 205 (1981). The Supreme Court has recognized that " ' "[g]ood faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could have not been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.' " *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443 (1996), quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990).

{¶ 31} " 'Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' " *Lucarell* at ¶ 43, citing Restatement, Section 205, comment a. The Supreme Court has, however, "rejected the contention that a party breaches the implied duty of good faith and fair dealing merely by seeking to enforce the contract or by acting as permitted by its express terms." *Lucarell* at ¶ 43, citing *Ed Schory & Sons* at 443-44; *Wendy's Internatl., Inc. v. Saverin,* 337 Fed.Appx. 471, 477 (6th Cir.2009); 23 Lord, *Williston on Contracts*, Section 63:22 (4th Ed.2003). "[T]here is no violation of the implied duty unless there is a breach of a specific obligation imposed by the contract, such as one that permits a party to exercise discretion in performing a contractual duty or in rejecting the other party's performance." *Lucarell* at ¶ 43, citing *Ed Schory & Sons* at 443-44; 23 Lord, Section 63:22; Restatement, Section 205, comment e. Accordingly, there is no separate cause of action in Ohio for breach of the implied duty of good faith and fair dealing. *Lucarell* at ¶ 47. *See also Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. No. 04AP-980, 2006-Ohio-638, ¶ 98.

{¶ 32} Because the contractual limitations period bars Sourial's breach of contract claims as a matter of law and because no violation of the implied duty of good faith and fair dealing exists absent an actionable breach of a specific obligation imposed by the contract, we hold the trial court did not err when it determined Nationwide was entitled to judgment as a matter of law on Sourial's claim for breach of the covenant of good faith and fair dealing.

### 3. Fraud in the Inducement and Fraudulent Misrepresentation

{¶ 33} Pursuant to the trial court's unappealed judgment issued October 21, 2016, Sourial's fraud claims are governed by the substantive law of Indiana. Under Indiana law, the elements of fraud are: (1) a material representation of past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made

with the intent to deceive, (5) was rightfully relied on by the complaining party, and (6) proximately caused the injury to the complaining party. *Tru-Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 44-45 (Ind.Ct.App.2009). "Fraudulent inducement occurs when a party is induced through fraudulent misrepresentation to enter into a contract." *Lightning Litho, Inc. v. Danka Industries, Inc.*, 776 N.E.2d 1238, 1241 (Ind.Ct.App.2002). "Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury has been sustained as a result of the tortious act of another." *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind.Ct.App.1996). "For a cause of action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable but only that some ascertainable damage has occurred." *Id.*[3]

{¶ 34} Under Indiana law, a fraudulent misrepresentation requires a statement of past or existing material fact on which the party to whom it is made has a right to and does rely, resulting in his injury. *Wisconics Engineering, Inc. v. Fisher*, 466 N.E.2d 745 (Ind.Ct.App.1984). Accordingly, Indiana law provides that "[f]raud may not be predicated upon promises to be performed in the future or future events, nor, as a general rule, do expressions of opinion constitute fraud." (Internal citation omitted.) *Id.* at 756.

{¶ 35} In Sourial's affidavit submitted in connection with his Civ.R. 56(F) motion, Sourial claims Nationwide management falsely represented the following:

> [T]he amount of money I would earn, that my pro forma and business plan were legitimate and accurate representations of what Nationwide expected my agency to earn, that Agency Executive Program agents easily meet their production requirements and complete the Program, that I would easily meet my Agency Executive Program production requirements, that if I acquired an existing book of business Nationwide would transfer me into the Replacement Agency Executive Program, that I would own my book of business and the books of business I acquired, and that if I ever left Nationwide, it would offer to purchase my book of business and the books of business I acquired.

---

[3] Similarly, under Ohio law, "[a] cause of action for fraud * * * accrues either when the fraud is discovered, or [when] in the exercise of reasonable diligence, the fraud should have been discovered." *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, ¶ 29, citing *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176 (1989), paragraph two of the syllabus.

(Aug. 30, 2017 Sourial Aff. at ¶ 7.)

{¶ 36}  In responding to Nationwide's interrogatory asking Sourial to "[i]dentify and describe * * * statements made to you by Nationwide * * * that relate to your fraud in the inducement claim," Sourial answered as follows:

- On several occasions in the Spring of 2010 at the ACB office on Penalton Pike Road in Indianapolis, Brad Bohn misrepresented to [Sourial] that no books of business were available for [Sourial] to acquire;

- On several occasions in the Spring and Summer of 2010 at the ACB office on Penalton Pike Road in Indianapolis, Brad Bohn and Diana Graovac misrepresented to [Sourial] that if he joined the AE Program, Nationwide would allow him to purchase an existing book of business and transfer into the RAE Program as soon as a book became available;

- On several occasions in the Spring of 2010 at the ACB office on Penalton Pike Road in Indianapolis, Brad Bohn and Dian Graovac misrepresented to [Sourial] that Nationwide would assign a [field] trainer to train [Sourial's] agency's staff and provide [Sourial] with the training, guidance, and support he needed to successfully operate his agency.

- After [Sourial] joined the AE Program, Diana Graovac repeatedly told [Sourial] during meetings at [Sourial's] AE Program agency office in Indianapolis, that he could transition into the RAE Program as soon as he acquired an existing book of business;

- In approximately November 2010, Diana Graovac met with [Sourial] at his AE Program agency office in Indianapolis and told him that a book of business worth more than $300,000 in total DWP had become available for him to purchase, and that he if purchased the book and financed the purchase through Nationwide Bank, he would transition into the RAE Program; and

- Nationwide concealed from [Sourial] that: the majority of its AE Program agents were failing; that Nationwide would retain exclusive ownership of the book that [Sourial] serviced; that after [Sourial] completed the ACB Program, that Nationwide would change [Sourial's] production requirements and interfere with his ability to meet those requirements; that Nationwide would not apply the

> premiums and policies from the $300,000 book of business that [Sourial] acquired towards [Sourial's] AE Program production requirements; that Nationwide would transfer policies out of [Sourial's] AE Program book of business; and that Nationwide would co-opt [Sourial's] book of business upon cancellation of the AE Program Agreement.

(Aug. 10, 2017 Pl.'s Answers to Def.'s Interrogs. at 5, 6.)

{¶ 37} It is evident from Sourial's affidavit that many of the allegedly fraudulent representations Sourial claims Nationwide made to him are unsupported promises and projections of future potential sales and earnings.  For example, statements about the amount of money Sourial could earn, the legitimacy and accuracy of his pro forma and business plan, that he would easily meet his AE program production requirements, and that Nationwide would offer to purchase his book of business and any book of business he had acquired when he left Nationwide are predictions about the future, not "a statement of the past or even the present."[4]  *Bye v. Nationwide Mut. Ins. Co.*, 733 F.Supp.2d 805, 819 (E.D.Mich.2010).  As such, they are not actionable under a fraud theory as a matter of law.

{¶ 38} Nevertheless, to the extent any of Sourial's fraud claims are actionable under Indiana law, the amended AE agreement Sourial signed on April 5, 2011 provides "[b]y signing this Amendment, [Sourial] waives all claims that he/she *has or may have* against Nationwide * * * as of the date of his/her execution of this Amendment." (Emphasis added.) (Amendment to AE Agreement at 1.)  The language used by the parties in the amended AE agreement is clearly broad enough to cover all the claims raised in Sourial's complaint, including any actionable claims of fraud in the inducement and fraudulent misrepresentation related to Sourial's initial entrance into the AE program.

{¶ 39} " '[A] release is a binding agreement between the parties under which at least one party to the agreement relinquishes an existing claim or cause of action against another

---

[4] Under the analogous provisions of Ohio law, the Supreme Court in *Lucarell* concluded as follows: "[A] party cannot predicate fraud on predictions or projections relating to future performance; rather, we have long recognized that to be actionable, a misrepresentation must involve a matter of fact that relates to the past or present. *See Block v. Block*, 165 Ohio St. 365, 377, 135 N.E.2d 857 (1956); *Armstrong v. Karshner*, 47 Ohio St. 276, 24 N.E. 897 (1890), paragraph one of the syllabus.  Thus, a pro forma is 'not * * * an actionable representation because it is a prediction about the future, not a statement about the past or even the present.' *Bye v. Nationwide Mut. Ins. Co.*, 733 F.Supp.2d 805, 819 (E.D.Mich.2010); *see also Rorig v. Thiemann*, S.D.Ohio No. 1:05CV801, 2007 U.S. Dist. LEXIS 51653, 2007 WL 2071909, *7 (July 17, 2007) ('a proforma by definition represents figures based on financial assumptions or projections')." *Lucarell* at ¶ 63.

party to the agreement.' " *Lucarell* at ¶ 55, quoting 29 Lord, *Williston on Contracts*, Section 73:1, at 8 (4th Ed.2003). Because a release is a contract, we apply Ohio substantive law to this determination pursuant to the trial court's unappealed judgment. "[W]hen a party signs and delivers a release, that party relinquishes all claims encompassed within it and has no other contractual or other duties to perform." *Lucarell* at ¶ 56. Absent fraud or mutual mistake, broadly worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor. *Thayer v. Diver*, 6th Dist. No. L-07-1415, 2009-Ohio-2053, ¶ 54. A release obtained by fraud in the factum is void ab initio, while a release obtained by fraud in the inducement is merely voidable on proof of fraud. *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13 (1990).

{¶ 40} A release of liability that is procured through fraud in the inducement can be contested only after a return or tender of consideration. *Id. See also Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 108 (10th Dist.1992) (though former employee produced evidence to create an issue of fact whether the release he signed as part of a separation agreement was procured by the employer's duress, the employee's failure to tender back the compensation he received in return for the release barred his tort claims against the employer). Sourial does not allege he returned or tendered back to Nationwide any bonus compensation he may have earned subsequent to signing the amended AE agreement containing the release. Nor has Sourial alleged he returned the $130,000 early cancellation payment made to him by Nationwide.

{¶ 41} In *Denlinger v. Columbus*, 10th Dist. No. 00AP-315 (Dec. 7, 2000), this court set out the general rules of law applicable to a release of claims as follows:

> A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release. *Haller v. Borror Corp.* (1990), 50 Ohio St. 3d 10, 13, 552 N.E.2d 207. A release is a contract and, as such, the overriding consideration in interpreting a release is to ascertain the intent of the parties, which intent is presumed to reside in the language the parties chose to employ in the agreement. *See, generally, Whitt v. Hutchison* (1975), 43 Ohio St. 2d 53, 330 N.E.2d 678; *Fabrizio v. Hendricks* (1995), 100 Ohio App. 3d 352, 654 N.E.2d 127. A court will not resort to extrinsic evidence in its effort to give effect to the parties' intentions

unless the language in a contract is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning. *Kelly v. Medical Life Ins. Co.* (1987), 31 Ohio St. 3d 130, 132, 509 N.E.2d 411. Further, absent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor. *See*, *e.g.*, *Task v. National City Bank*, 1994 Ohio App. LEXIS 437 (Feb. 10, 1994), Cuyahoga App. No. 65617, unreported (given broad language of the release, it was incumbent upon releasor to ascertain, at that time, whether he had any causes of action against defendant and, if so, to expressly manifest his intent to exclude those claims from the scope of the release); *see*, *generally*, *Whitt*, *supra*.

{¶ 42} In *Denlinger*, the plaintiff, a former employee of Columbus Public Schools, sought damages from the city of Columbus for breach of contract, defamation, breach of privacy, and intentional infliction of emotional distress. The trial court dismissed the complaint because the waiver and release provisions of the separation agreement precluded plaintiff's claims.

{¶ 43} On Denlinger's appeal to this court, we noted the broadly worded separation agreement provided the former employee waived all claims "arising from or in connection with" his employment and resignation with the school. *Id.* This court determined because the former employee's claims unquestionably arose from and/or were connected with his employment and/or resignation from employment, the release and waiver provision in the contract "clearly and unambiguously" encompassed the allegations in the complaint. *Id.* Accordingly, we affirmed the trial court's dismissal of those claims.

{¶ 44} Here, as was the case in *Denlinger*, the language the parties used in the amended AE agreement evidences the parties' intent to waive any claims that Sourial "has or may have" against Nationwide arising out of Sourial's participation in the ACB and AE programs. (Amendment to AE Agreement at 1.) In our view, the language in the instant release is broad enough to encompass the tort claims alleged in Sourial's complaint. Thus, the language of the release clearly and unambiguously encompasses the allegations in Sourial's complaint that comprise Sourial's claims for fraud in the inducement and misrepresentation.

{¶ 45} Releases from liability for future tortious conduct are generally not favored by the law and will be narrowly construed. *Denlinger*, citing *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 46-47 (1987); *Swartzentruber v. Wee-K Corp.*, 117 Ohio App.3d 420, 424 (4th Dist.1997); *see also Thompson v. Otterbein College*, 10th Dist. No. 95APE08-1009 (Feb. 6, 1996). For example, it is error for a trial court to grant summary judgment to a defendant based on a release of liability where the release did not encompass intentionally tortious conduct that took place after plaintiff executed the release. *Haller*. Here, however, Sourial acknowledged in his deposition that the fraudulent conduct alleged in Sourial's complaint, and as set out in his answers to Nationwide's interrogatories, occurred prior to the date Sourial signed the release in question. During Sourial's deposition, Nationwide's counsel asked Sourial about each of the alleged fraudulent inducements or misrepresentations identified by Sourial in his answers to Nationwide's interrogatories. When counsel had completed his examination regarding the allegations of fraud, the following exchange took place:

> Q. Okay. Would it be safe to say that all of these representations or concealments all occurred before 2011?
>
> A. Yes.

(Sourial Depo., Vol. 1 at 263.)

{¶ 46} According to Sourial's deposition testimony, Nationwide committed the alleged fraudulent conduct at issue before Sourial executed the amended AE agreement containing the release. "Whether a release operates upon a certain liability depends entirely upon the intention of the parties, which is to be gathered from the language of the release and the state of facts then existing." *Task v. Natl. City Bank*, 8th Dist. No. 65617 (Feb. 10, 1984), citing *Whitt v. Hutchison*, 43 Ohio St.2d 53 (1975); *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus; *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635 (1992). "[A]bsent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor." *Denlinger,* citing *Task* (given broad language of the release, it was incumbent on releasor to ascertain, at that time,

whether he had any causes of action against defendant and, if so, to expressly manifest his intent to exclude those claims from the scope of the release).

{¶ 47} Though Sourial has claimed his assent to the original AE agreement was induced by certain misrepresentations, Sourial does not contend the release is voidable due to fraud in the procurement of the release. In his reply brief in this court, Sourial argues:

> As Nationwide notes, where a party seeks to rescind a voidable release that was procured by fraud in the inducement, he/she must return consideration *paid in exchange* for the release. Again, Nationwide misses the mark, as Sourial's underlying defense is *not* that the release is void or voidable, but that the release—even if valid—*does not encompass* non-accrued claims of which he was *unaware.* * * * Even if Nationwide *paid* legally sufficient consideration *in exchange* for the release (which it did not), Sourial was *not* required to return it to maintain claims that are *not encompassed* by the release.

(Emphasis sic.) (Sourial's Reply Brief at 1-2, fn.1.)

{¶ 48} Neither does Sourial contend that his assent to the release was the result of a mutual mistake of fact nor that he did not realize he was signing a release of claims. Accordingly, to the extent Sourial has alleged an actionable claim of fraudulent inducement and/or fraudulent misrepresentation against Nationwide based on facts that existed when he executed the release, Sourial waived any such claim as a matter of law.

### 4. Quasi Contract

{¶ 49} The trial court concluded that the existence of a fully integrated ACB agreement and AE agreement barred Sourial's claims for promissory estoppel and unjust enrichment as a matter of law. Because these claims are not contractual, we will apply Indiana substantive law in our analysis pursuant to the trial court's unappealed prior judgment. As a general proposition of Indiana law, "a party is excluded from presenting extrinsic evidence of prior or contemporaneous oral agreements offered to vary or contradict the terms of a written contract." *Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 161 (Ind.2005), citing *Paulson v. Centier Bank*, 704 N.E.2d 482, 492 (Ind.Ct.App.1998). Under such circumstances, "a written contract is presumed to embody the parties' entire agreement." *Sees* at 161, citing *Keystone Square Shopping Ctr. Co. v. Marsh Supermarkets, Inc.*, 459 N.E.2d 420, 422 (Ind.Ct.App.1984). There are, however,

exceptions to this rule "including a claim that a party was induced through fraudulent representation to enter the contract." *See* at 161, citing *Circle Ctr. Dev. Co. v. Y/G Indiana, L.P.*, 762 N.E.2d 176, 179 (Ind.Ct.App.2002). Accordingly, to the extent Sourial's contract or quasi-contract claims survive the contractual limitations period and integration clause, the release would also bar those claims as a matter of law

{¶ 50} Having determined there are no genuine issues of material fact and, by virtue of its contractual defenses, Nationwide is entitled to judgment as a matter of law, we turn our attention to Sourial's Civ.R. 56(F) motion. Sourial contends the trial court abused its discretion when it denied his Civ.R. 56(F) motion for a continuance. We disagree.

{¶ 51} In *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, ¶ 100 (10th Dist.), this court discussed the burden on the moving party as follows:

> Pursuant to Civ.R. 56(F), a party may seek additional time in which to develop the facts needed to adequately oppose a motion for summary judgment. *Hatton v. Interim Health Care of Columbus, Inc.*, 10th Dist. No. 06AP-828, 2007-Ohio-1418, ¶ 10. The party seeking the Civ.R. 56(F) continuance bears the burden of establishing why the party cannot present sufficient facts to justify its opposition to a motion for summary judgment without a continuance. *Perpetual Fed. Sav. Bank v. TDS2 Prop. Mgt., LLC*, 10th Dist. No. 09AP-285, 2009-Ohio-6774, ¶ 13; *Waverly City School Dist. Bd. of Edn. v. Triad Architects, Inc.*, 10th Dist. No. 08AP-329, 2008-Ohio-6917, ¶ 17. The moving party cannot meet this burden with mere allegations; rather, the moving party must aver in an affidavit a particularized factual basis that explains why further discovery is necessary. *Morantz v. Ortiz*, 10th Dist. No. 07AP-597, 2008-Ohio-1046, ¶ 22; *Hahn v. Groveport*, 10th Dist. No. 07AP-27, 2007-Ohio-5559, ¶ 30. Absent an abuse of discretion, an appellate court will not reverse a trial court's ruling on a Civ.R. 56(F) motion. *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 110 Ohio St.3d 343, 2006-Ohio-4574, ¶ 9, 853 N.E.2d 657.

{¶ 52} The trial court, in denying Sourial's Civ.R. 56(F) motion, determined Sourial failed to meet his burden. We agree with the trial court's analysis.

{¶ 53} In support of his Civ.R. 56(F) motion, Sourial presented the affidavit of his trial counsel, Matthew S. Grimsley, in addition to his own affidavit. Sourial's trial counsel averred, in relevant part, as follows:

> Nationwide argues that [Sourial] released most of his claims by executing an AE Agreement Amendment on April 6, 2011. [Sourial] intends to rebut this argument in part by establishing that the purported release is unenforceable because it was procured by fraud, that Nationwide concealed information from [Sourial] pertaining to the failure of the AE Program, and that [Sourial's] claims otherwise accrued after April 6, 2011.

(Aug. 11, 2017 Grimsley Aff. at ¶ 12.)

{¶ 54} Sourial first claims further discovery is needed to establish his fraud claims that accrued after he signed the release. Sourial argues, under Ohio law, a party cannot release fraud claims that have not yet accrued when the release is executed. We disagree. As previously stated, the operative language of the release encompasses any claims Sourial "has or may have" against Nationwide. (Amendment to AE Agreement at 1.) This court has previously stated that "absent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor." *McBroom v. Safford*, 10th Dist. No. 11AP-885, 2012-Ohio-1919, ¶ 12, citing *Task* (given broad language of the release, it was incumbent on releasor to ascertain, at that time, whether he had any causes of action against defendant and, if so, to expressly manifest his intent to exclude those claims from the scope of the release).

{¶ 55} The cases cited by Sourial expressing an opposing view arise primarily under federal laws, which we decline to apply in this case. *See, e.g., Callen v. Pennsylvania RR. Co.*, 332 U.S. 625 (1948) (case decided under the Federal Employees Liability Act, which provides at 45 USCS 55 that "[a]ny contract, * * * the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act * * * shall to that extent be void"); *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 267 (6th Cir.1988) (case decided under the federal copyright laws); *Anderson v. A.C. & S. Inc.*, 154 Ohio App.3d 393, 2003-Ohio-4943 (8th Dist.) (case decided under the Federal Employees Liability Act); *Isroff v. Westhall Co.*, 9th Dist. No. 14184 (Feb. 21, 1990) (citing *Forry* case decided under federal copyright laws); *Babbitt v. Norfolk & W. Ry. Co.*, 104 F.3d 89, 92 (6th Cir.1997) (case decided under Federal Employees Liability Act). Under the circumstance, we cannot say the trial court abused its discretion by refusing to allow Sourial

to conduct additional discovery to establish his fraud claims that had not yet accrued when he executed the release and where it is clear that such evidence would not have provided a defense to the release. Moreover, Sourial's Civ.R. 56(F) motion fails to explain why he could not present sufficient facts through other forms of discovery to establish when his fraud claims accrued without the need for a continuance.

{¶ 56} Sourial next contends additional discovery is necessary to establish that the release was procured by fraud. Sourial's affidavits in support of his Civ.R. 56(F) motion do not, however, aver a particularized factual basis for the trial court to determine that such evidence can be found in the Nationwide records Sourial seeks, nor does his motion explain why he is unable to present such facts without a continuance. Moreover, as previously noted, Sourial makes clear in his reply brief in this court that he is not endeavoring to avoid the release on the grounds it was procured by fraud.

{¶ 57} Sourial, as the moving party, must aver in an affidavit a particularized factual basis that explains why further discovery is necessary. *Morantz v. Ortiz*, 10th Dist. No. 07AP-597, 2008-Ohio-1046, ¶ 22; *Hahn v. Groveport*, 10th Dist. No. 07AP-27, 2007-Ohio-5559, ¶ 30. A party moving the trial court for a Civ.R. 56(F) continuance cannot meet his burden with mere allegations. *Ryan* at ¶ 100, citing *Morantz* at ¶ 22; *Hahn* at ¶ 30. Here, Sourial seeks a continuance of the trial court's ruling on Nationwide's motion for summary judgment in order to obtain discovery that the trial court has previously denied him. In our view, it was incumbent on Sourial to provide the trial court with a stated, particularized factual basis on which the trial court could conclude that further discovery would yield evidence that would negate the impact of the release. Sourial failed to do so.

{¶ 58} "As the provisions of Civ.R. 56(F) are discretionary, we review the trial court's determination for an abuse of discretion." *Libertarian Party of Ohio v. Husted*, 10th Dist. No. 16AP-496, 2017-Ohio-7737, ¶ 76, citing *Perpetual Fed. Sav. Bank v. TDS2 Prop. Mgt., LLC*, 10th Dist. No. 09AP-285, 2009-Ohio-6774, ¶ 11. "An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary or unconscionable." *Husted* at ¶ 76, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). In this case, Sourial failed to properly support his Civ.R. 56(F) motion. Accordingly, we hold the trial court did not abuse its discretion in denying Sourial's Civ.R. 56(F) motion.

{¶ 59} Pursuant to Civ.R. 56(E), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Sourial did not respond to the motion as required by Civ.R. 56(E). For the reasons stated above, we have determined Nationwide's properly supported motion for summary judgment demonstrates the absence of a genuine issue of material fact for trial. Accordingly, the trial court did not abuse its discretion in denying Sourial's Civ.R. 56(F) motion. Sourial's eleventh assignment of error is overruled.

### B. Sourial's Assignments of Error One Through Nine

{¶ 60} In assignments of error one through nine, Sourial challenges various aspects of the trial court's rulings on his motion to compel discovery, Sourial's motion for reconsideration of that decision, and Sourial's motion for an in camera inspection of documents. Having determined the trial court did not err by granting summary judgment for Sourial because Sourial's claims against Nationwide were barred as a matter of law, either by the contractual limitations period, the integration clause and/or the release, we find Sourial's assignments of error one through nine do not allege reversible error because the discovery Sourial sought to compel would not have produced evidence negating the contractual defenses asserted by Nationwide.

{¶ 61} By way of explanation, in Sourial's first, second, fourth, and seventh assignments of error, Sourial contends the trial court abused its discretion when it failed to compel Nationwide to produce unredacted records documenting the performance of other agents in the AE program and any incentives provided to Nationwide managers and vice presidents for recruiting new agents into the program. Sourial asserts these records provide necessary support for his fraud claims.[5] Even if it were assumed the Nationwide records sought by Sourial contained the evidence Sourial claims, the release encompassed all claims based on facts that existed before he signed the release. Pursuant to App.R.

---

[5]As we noted in overruling Sourial's eleventh assignment of error, Sourial has failed to produce any evidence to support a finding that a majority of agents were failing. Accordingly, his claim that Nationwide records contain such information is pure speculation.

12(A)(1)(c), a court of appeals need not decide an assignment of error if it is "made moot by a ruling on another assignment of error." *See Smith v. Barclay*, 10th Dist. No. 11AP-798, 2012-Ohio-5086 (because a client's legal malpractice claim was barred by the statute of limitations, the client's remaining assignment of error alleging the trial court erred in permitting attorney to withdraw certain admission was rendered moot); *Aladdins Lights, Inc. v. Eye Lighting Internatl.*, 9th Dist. No. 28182, 2017-Ohio-7229 (court of appeals ruling that the trial court did not err when it granted summary judgment to the appellee on the issue of standing rendered moot the appellant's assignment of error challenging the trial court's denial of its motion to compel discovery); *Chambers v. Melling, Harding, Schuman & Montello,* 8th Dist. No. 85045, 2005-Ohio-2456 (where the court of appeals determines the trial should have granted summary judgment in favor of the appellee because the appellant's complaint was untimely filed, the appellant's remaining assignment of error challenging the trial court's decision to issue a protective order to a third-party witness is moot); *Doe v. Rupp*, 8th Dist. No. 71938 (Jan. 29, 1998) (where summary judgment for defendant based on the running of the statute of limitations is affirmed on appeal, plaintiff's assignments of error challenging the trial court's ruling on plaintiff's motions to compel discovery is moot as the discovery sought did not relate to plaintiff's tolling argument); *Zellmer & Gruber v. George*, 8th Dist. No. 68674 (Feb. 8, 1996) (because the trial court properly entered default judgment for defendant, plaintiff's assignments of error regarding discovery rulings are moot); *Morgan v. Ohio State Univ. College of Dentistry,* 10th Dist. No. 13AP-287, 2014-Ohio-1846, ¶ 38 (in appellant's medical malpractice action, appellant's assignments of error challenging the trial court's findings of fact as to appellee's breach of standard of care were rendered moot by the ruling on a separate assignment of error that the trial court properly determined that the appellant failed to present evidence of proximate cause).

{¶ 62} Here, because the trial court granted summary judgment in favor of Nationwide on the strength of the release and not the absence of evidence to support Sourial's fraud claims, and because we have overruled Sourial's eleventh assignment of error challenging the trial court's ruling, any trial court error in failing to compel discovery as alleged in Sourial's first, second, fourth, and seventh assignments of error would not change the outcome of this appeal. Consequently, our ruling on Sourial's eleventh

assignment of error renders moot Sourial's first, second, fourth, and seventh assignments of error pertaining to discovery issues.

{¶ 63} Similarly, in Sourial's sixth and eighth assignments of error, Sourial alleges the trial court abused its discretion in failing to compel Nationwide to respond to interrogatories seeking information about the RAE program and existing books of business available for purchase during Sourial's tenure as an agent in the AE program. Again, even if we were to conclude the Nationwide records sought by Sourial possibly contain evidence to support Sourial's fraud claims, such evidence is not probative of Sourial's allegation that the subsequent release does not encompass those claims. Accordingly, our ruling on Sourial's eleventh assignment of error renders moot Sourial's sixth and eighth assignments of error pertaining to discovery issues.

{¶ 64} In Sourial's ninth assignment of error, he contends the trial court erred by failing to compel Nationwide to answer Interrogatories 26, 27, 28, and 29. According to Sourial, Nationwide objected to these interrogatories because he had exceeded the total number of interrogatories permitted by Civ.R. 33. Though Sourial argues that Nationwide's objection is erroneous and that the trial court abused its discretion by denying Sourial's motion to compel, Sourial's brief to this court does not does explain how he was prejudiced by the trial court's failure to compel a response by Nationwide. Accordingly, our ruling on Sourial's eleventh assignment of error renders moot Sourial's ninth assignment of error relating to his motion to compel certain interrogatory responses.

{¶ 65} In Sourial's third assignment of error, he alleges the trial court erred by failing to compel Nationwide to reveal the identity of the person(s) who responded to his interrogatories, and in Sourial's fifth assignment of error, he alleges the trial court erred by failing to compel Nationwide to provide information pertaining to similar actions brought against it. Sourial has not explained how this discovery would produce evidence in support of his contention that the release does not encompass his fraud claims. Accordingly, we find that our ruling on Sourial's eleventh assignment of error renders moot Sourial's third and fifth assignments of error pertaining to discovery issues.

### C. Sourial's Tenth Assignment of Error

{¶ 66} In Sourial's tenth assignment of error, he argues the trial court abused its discretion in denying his motion to vacate or enlarge the case schedule pending a ruling on

his motion to compel.  As we noted in ruling on Sourial's eleventh assignment of error, Sourial waived all of his claims when he executed the release.  As a result, the additional time Sourial requested in order to obtain discovery would not have yielded evidence to support a triable issue of fact.  Our ruling on Sourial's eleventh assignment of error, therefore, renders moot the alleged trial court error raised in Sourial's tenth assignment of error.

## V.  CONCLUSION

{¶ 67} Having overruled Sourial's eleventh assignment of error, and having determined Sourial's remaining assignments of error are moot, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER and HORTON, JJ., concur.

_____