[Cite as *Aladdin's Lights, Inc. v. Eye Lighting Internatl.*, 2017-Ohio-7229.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| ALADDINS LIGHTS INC. | | C.A. No.      28182 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| EYE LIGHTING INTERNATIONAL | | |
| Appellee | | CASE No.     CV-2013-01-0414 |

DECISION AND JOURNAL ENTRY

Dated: August 16, 2017

SCHAFER, Judge.

{¶1}   Plaintiff-Appellant, Aladdin's Lights, Inc. ("Aladdin's Lights"), appeals the judgments of the Summit County Court of Common Pleas denying its motion for summary judgment and granting summary judgment in favor of Defendant-Appellee, EYE Lighting International of North America, Inc. ("EYE Lighting"). For the reasons set forth below, we affirm.

I.

{¶2}   Aladdin's Lights is located in Twinsburg, Ohio and is a retailer and distributor of small consumer and commercial horticultural products. EYE Lighting, a subsidiary of Iwasaki Electric of Japan, is located in Mentor, Ohio, and designs and manufactures a variety of lamps. One of EYE Lighting's products is the Hortilux branded grow lamp, which is marketed as a premium lamp brand. Aladdin's Lights is owned by a former EYE Lighting employee who left the company in 1999.

{¶3}   Aladdin's Lights used to sell EYE Lighting's Hortilux brand grow lamps. Aladdin's Lights alleges that on July 1, 2010, EYE Lighting, in cooperation with its master distributors, implemented a "resale price maintenance" (RPM) policy for its Hortilux lamps, which EYE Lighting claims it did in order to protect the integrity of its Hortilux brand. Aladdin's Lights alleges that as part of this RPM policy, EYE Lighting demanded that resellers advertise and sell its Hortilux lamps at both a "minimum advertised price" ("MAP") and a "minimum selling price" ("MSP"), both of which were established by EYE Lighting. According to Aladdin's Lights, EYE Lighting informed them that the MAP/MSP were mandatory and that noncompliance with its pricing scheme would result in EYE Lighting's semi-exclusive distributors cutting-off their supply of Hortilux lamps. Aladdin's Lights subsequently refused to take part in EYE Lighting's MAP/MSP pricing scheme. As such, Aladdin's Lights asserts that EYE Lighting "has refused, in conjunction with and by direction to and with compliance by its master distributors[,] to sell [its] products to [Aladdin's Lights] and has revoked [Aladdin's Lights]'s status as a Hortilux line reseller in the chain of commerce effective August 2010." Aladdin's Lights maintains that to this day, it remains willing and able to order and purchase Hortilux lamps from EYE Lighting, but that EYE Lighting "refuses to and continues to refuse to sell to [Aladdin's Lights] and continues to refuse to permit [Aladdin's Lights] to sell [its] products, since [Aladdin's Lights] refuses to abide by [EYE Lighting]'s illegal MAP and MSP pricing."

{¶4}   Aladdin's Lights alleges that EYE Lighting's RPM policy adversely affects competition, chiefly by artificially inflating the price of Hortilux lamps and eliminating consumers' freedom to do comparative shopping for competitive pricing of EYE Lighting's products, which results in significant overcharges to consumer customers of all retail resellers

nationwide. Moreover, Aladdin's Lights alleges that as a direct and proximate result of EYE Lighting's insistence that Aladdin's Lights abide by its RPM policy, Aladdin's Lights faces "the inevitable loss of significant sales and profit due to certain neutralization of its competitive and profitable pricing advantage that flowed from continuous improvement to its operating efficiencies."

{¶5} Thus, on January 18, 2013, Aladdin's Lights filed a complaint against EYE Lighting in the Summit County Court of Common Pleas pleading several antitrust-related claims and seeking relief under Ohio's Valentine Act, R.C. 1331.01 et seq. In its complaint, Aladdin's Lights requested damages, as well as a restraining order, preliminary injunction, and permanent injunction enjoining EYE Lighting from "refusing to sell its products to [Aladdin's Lights] and further ordering [EYE Lighting] to reinstate and appoint [Aladdin's Lights] as an authorized dealer of all of [EYE Lighting]'s and Iwasaki's products, including, but not limited to the Hortilux line." On March 15, 2013, EYE Lighting filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, arguing that Aladdin's Lights lacked standing to bring its antitrust claims and also that the allegations contained in Aladdin's Lights' complaint were "much too amorphous to satisfy the stringent applicable antitrust-pleading requirements." Aladdin's Lights filed a brief in opposition to EYE Lighting's motion to dismiss and subsequently filed a motion to amend its complaint pursuant to Civ.R. 15(A). The trial court ultimately granted Aladdin's Lights' motion to amend its complaint and denied EYE Lighting's Civ.R. 12(B)(6) motion to dismiss.

{¶6} On June 18, 2013, Aladdin's Lights filed an amended complaint, accusing EYE Lighting of vertical price fixing, entering into a group boycott with other distributors, and conspiring to not deal with them. Aladdin's Lights' amended complaint again requested a

restraining order, preliminary injunction, and permanent injunction enjoining EYE Lighting from "refusing to sell its products to [Aladdin's Lights] and further ordering [EYE Lighting] to reinstate and appoint [Aladdin's Lights] as an authorized dealer of all of [EYE Lighting]'s and Iwasaki's products, including, but not limited to the Hortilux line." It also sought compensatory, treble, and punitive damages. On August 9, 2013, EYE Lighting filed its answer denying the allegations set forth in Aladdin's Lights' complaint.

{¶7} On October 10, 2013, Aladdin's Lights filed a motion to compel discovery. The next day, EYE Lighting filed a motion for a protective order pursuant to Civ.R. 26(C) seeking to ensure that both parties' extremely sensitive business documents are used strictly "for litigation purposes, and not by the opposing parties themselves for business competition." Aladdin's Lights opposed EYE Lighting's motion for a protective order. The trial court held a hearing on EYE Lighting's motion and ultimately granted its motion for a protective order, determining that 14 documents be marked as "Attorneys' Eyes Only."

{¶8} On February 10, 2014, while EYE Lighting's motion for a protective order was still pending before the trial court, EYE Lighting filed a Civ.R. 12(C) motion for judgment on the pleadings, to which Aladdin's Lights responded in opposition. The trial court ultimately denied EYE Lighting's Civ.R. 12(C) motion for judgment on the pleadings. On September 4, 2015, at the close of discovery, Aladdin's Lights filed a motion for partial summary judgment arguing that no genuine issue of material fact exists concerning EYE Lighting's liability, but that a dispute remains concerning damages. EYE Lighting filed a motion for summary judgment on the same day, wherein it articulated at least seven reasons as to why it was entitled to judgment as a matter of law. Each party filed an opposition brief in response to the opposing party's summary judgment motion. On March 2, 2016, the trial court granted EYE Lighting's motion

for summary judgment on the basis that Aladdin's Lights was merely an indirect purchaser of the Hortilux lamp and, thus, did not have standing to bring the instant antitrust lawsuit. On March 4, 2016, the trial court denied Aladdin's Lights' motion for partial summary judgment after again concluding that Aladdin's Lights lacked standing to bring the present lawsuit.

{¶9} Aladdin's Lights filed this timely appeal and presents three assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred in granting summary judgment [in favor of EYE Lighting].**

{¶10} In its first assignment of error, Aladdin's Lights argues that the trial court erred by granting EYE Lighting's motion for summary judgment. We disagree.

**A. Standard of Review**

{¶11} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is only appropriate where (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C). Before making such a contrary finding, however, a court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶12} Summary judgment consists of a burden-shifting framework. To prevail on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio

St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 449 (1996).

### Ohio's Valentine Act

**{¶13}** Ohio's antitrust statutes, known as the Valentine Act, are contained in R.C. Chapter 1331, which is entitled "Monopolies." The Valentine Act was modeled after the federal Sherman Antitrust Act, and the Supreme Court of Ohio has interpreted the Valentine Act in light of federal judicial construction of the Sherman Antitrust Act. *C.K. & J.K., Inc. v. Fairview Shopping Ctr. Corp.*, 63 Ohio St.2d 201, 204 (1980); *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005–Ohio–4985, ¶ 13. Former R.C. 1331.01(B)(6) specifies that a "trust" is unlawful. A "trust" is defined, inter alia, as a combination by two or more persons to carry out restrictions in either trade or commerce or to prevent competition in the sale of produce or commodities. Former R.C. 1331.01(B)(1)-(3). Thus, "[t]o establish a restraint of trade claim, a plaintiff must show that there is a combination of effort by two or more actors that unreasonably restrains trade in a relevant market." *Eichenberger v. Graham*, 10th Dist. Franklin No. 12AP-216, 2013-Ohio-1203, ¶ 14, citing *N.H.L. Players' Assn. v. Plymouth Whalers Hockey*, 325 F.3d 712, 718 (6th Cir.2003). Examples of anticompetitive practices include price fixing, artificial restrictions on supply, division of markets, group boycotts, and tying arrangements. *See* former R.C. 1331.01(B); *see also N. Pacific Ry. Co. v. United States.*, 356 U.S. 1, 5 (1958).

**{¶14}** Keeping in line with Ohio courts' longstanding practice of interpreting the Valentine Act in accordance with federal law, the Supreme Court of Ohio adopted the United States Supreme Court's holding in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which held that an indirect purchaser of goods or services is prohibited from bringing a private action against a seller engaged in allegedly monopolistic practices in the sale of those goods or services, *id*. at 746-747. *Johnson* at ¶ 15. This rule, known as the "*Illinois Brick* rule" or the "direct-purchaser requirement," limits who can bring an antitrust claim to that of "the injured party – the retailer who contracted directly with the manufacturer and paid the overcharge." *Id*. at ¶ 10; *see McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 847-848 (3d Cir.1996) ("Recognizing that allowing an indirect purchaser to assert an antitrust claim for the portion of an overcharge 'passed on' to the indirect purchaser would create an intractable problem of tracing and apportioning damages between different purchasers in the chain of distribution, the [United States Supreme] Court chose to avoid this morass by enunciating a bright-line rule that only the purchaser immediately downstream from the alleged monopolist may bring an antitrust action."), citing *Illinois Brick* at 744; *see also In re ATM Fee Antitrust Litigation*, 686 F.3d 741, 748 (9th Cir.2012) (noting the *Illinois Brick* court's rationale that indirect purchasers suffer no injury under § 4 of the Clayton Act and, thus, only direct purchasers have standing to seek damages for antitrust violations). In sum, "an indirect purchaser of goods may not assert a Valentine Act claim for alleged violations of Ohio antitrust law." *Id*.

### B. Analysis

**{¶15}** Here, the trial court granted EYE Lighting's motion for summary judgment on the basis that Aladdin's Lights was an indirect purchaser of Hortilux lamps and, thus, lacked standing to bring Valentine Act claims pursuant to the *Illinois Brick* rule. The trial court also

subsequently denied Aladdin's Lights' motion for partial summary judgment for the same reason. Accordingly, we confine our review to this narrow issue.

**{¶16}** In its motion for summary judgment, EYE Lighting argued that Aladdin's Lights did not have standing under the Valentine Act to bring its antitrust lawsuit. In support of its motion, EYE Lighting cited to the deposition testimony of Bruce Jenkins, who is Aladdin's Lights' owner and also a former employee of EYE Lighting. Specifically, EYE Lighting cites to the portion of Mr. Jenkins' testimony wherein he states that Aladdin's Lights never purchased Hortilux product directly from EYE Lighting because "[EYE Lighting] didn't sell directly. They only sold through distribution." From this evidence, we determine that EYE Lighting satisfied its initial *Dresher* burden with respect to proving that Aladdin's Lights was merely an indirect purchaser and therefore lacked standing to bring the present lawsuit.

**{¶17}** With EYE Lighting having satisfied its initial burden on summary judgment, the burden then shifts to Aladdin's Lights, as the non-moving party, to provide specific facts which would demonstrate the existence of a "genuine triable issue" with respect to its standing to pursue its antitrust claims. *Tompkins*, 75 Ohio St.3d at 449. In its brief in opposition to EYE Lighting's motion for summary judgment, Aladdin's Lights appears to concede that it is an indirect purchaser of EYE Lighting's Hortilux lamps, but cites to a litany of federal cases that have recognized exceptions to the *Illinois Brick* rule. One such exception that Aladdin's Lights claims to satisfy is the "co-conspirator exception," which permits an indirect purchaser of goods to pursue antitrust claims if the manufacturer and the distributor engage in a vertical antitrust conspiracy by fixing prices that are ultimately borne by the indirect purchaser. *In re ATM Fee Antitrust Litig.*, 686 F.3d at 748-749. "Under this 'co-conspirator' theory, the party who purchases from a co-conspirator middleman is treated as a 'direct purchaser' because the

manufacturers and the middleman direct purchaser are viewed as one entity." *In re Nifedipine Antitrust Litig.*, 335 F.Supp.2d 6, 14 (D.D.C.2004). However, we note that the Supreme Court of Ohio has not adopted the so-called "co-conspirator exception" despite having the opportunity to do so. *See Johnson*, 106 Ohio St.3d 278, 2005–Ohio–4985. Therefore, we reject Aladdin's Lights' argument concerning the "co-conspirator exception" to the *Illinois Block* rule.

{¶18} Thus, based on the foregoing, we conclude that Aladdin's Lights has failed to satisfy its reciprocal burden of demonstrating the existence of a genuine issue of material fact pertaining to its standing in the present case. Accordingly, we determine that the trial court did not err by granting EYE Lighting's motion for summary judgment.

{¶19} Aladdin's Lights' first assignment of error is overruled.

### Assignment of Error II

**The trial court erred in denying summary judgment to the Plaintiff.**

### Assignment of Error III

**The trial court abused its discretion in granting the Defendant's motion regarding their request for a protective order.**

{¶20} In its second assignment of error, Aladdin's Lights argues that the trial court erred by denying its motion for partial summary judgment. In its third assignment of error, Aladdin's Lights contends that the trial court erred by granting EYE Lighting's motion for a protective order concerning the production and treatment of sensitive documents. However, our resolution of Aladdin's Lights' first assignment of error renders these assignments of error moot and we decline to address them. *See* App.R. 12(A)(1)(c).

III.

**{¶21}** Aladdin's Lights' first assignment of error is overruled and its second and third assignments of error are moot. Accordingly, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
CONCURS.

HENSAL P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

RICHARD HAMILTON, Attorney at Law, for Appellee.