[Cite as *Emanuel's, L.L.C. v. Restore Marietta, Inc.*, 2023-Ohio-147.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| Emanuel's LLC, | : | Case No. 22CA6 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Restore Marietta, Inc., et al., | : | |
| Defendants-Appellees. | : | **RELEASED 1/17/2023** |

_____
APPEARANCES:

Anne C. Labes, Esq., Parkersburg, West Virginia, for appellant.

Jared A. Wagner and Jane M. Lynch, Green & Green, Lawyers, Dayton, Ohio, and Paul Betram, III, City of Marietta Law Director, Marietta, Ohio, for appellee City of Marietta.

Patrick Kasson and Kent Hushion, Columbus, Ohio, for appellees Restore Marietta, Inc. and Christie Lynn Thomas.[1]
_____
Hess, J.

{¶1} Emanuel's LLC appeals from a judgment of the Washington County Common Pleas Court granting judgment on the pleadings in favor of the city of Marietta (the "City"), Restore Marietta, Inc., d/b/a Marietta Main Street ("MMS"), and Christie Lynn Thomas, defendants below. Emanuel's presents three assignments of error asserting that the trial court erred by extending statutory immunity to the defendants and by dismissing tortious interference with business relations and monopoly claims contrary to

_____
[1] We have used the spelling of Thomas's first name in the complaint. However, we observe that in her answer, Thomas asserted that her first name was spelled "Cristie," and Emanuel's has used that spelling in its appellate brief.

facts asserted in the complaint. For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} In June 2021, Emanuel's filed a complaint against the City, MMS, and Thomas which alleged the following. Emanuel's owns real estate in Marietta, Ohio, where it operates an Israeli restaurant, TLV Restaurant. In March 2021, the mayor of Marietta submitted to the Marietta City Council the final version of an application to establish a Designated Outdoor Refreshment Area, or "DORA," in an area of downtown Marietta where TLV is located. A DORA is an area "where the State's open container laws are lifted during designated times, allowing customers to purchase alcoholic beverages from permitted establishments and carry the containers within the confined DORA area." Emanuel's holds a D5L liquor license from the Ohio Division of Liquor Control for TLV, and the application identified TLV as a qualified permit holder. The application mentioned DORA cups, included a "mock-up design of the cups," and stated that the cups would be " 'made available' to qualified permit holders." On April 29, 2021, the Marietta City Council passed a resolution to establish the DORA. The City announced that its DORA program would begin on June 4, 2021.

{¶3} On or about May 18, 2021, Thomas, the Executive Director of MMS, a private not-for-profit corporation, "initiated a private e-mail chain to certain designated permit holders within the DORA zone, informing them of additional regulations [MMS] was requiring permit holders to comply with, including the purchase of designated cups" from MMS. Emanuel's was not included in the chain. The information in the chain, "including the link to purchase the cups, was not made publicly available at any time," and "[t]he

only way to receive this information and purchase the cups was through the private email chain generated by [MMS]." The cups are sold for $0.90 each, "with part of the profit allegedly inuring to [MMS], part of the profit inuring to the print shop that designed the cups and orders the cups, part of the profit inuring to the benefit of the company that actually prints the cups, and part of the profit allegedly inuring to the benefit of a fund maintained by [MMS]." It costs approximately $50.00 to ship 250 cups, "the minimum order permitted." And the link to purchase the cups "indicates that businesses are required to charge their customers $1.00 per cup."

{¶4} On May 24, 2021, Emanuel's "received its DORA license from the Ohio Division of Liquor [C]ontrol." On June 3, 2021, Emanuel's contacted the City "to obtain the DORA cups mentioned in" the application and was directed to contact Thomas of MMS. Thomas informed representatives of Emanuel's that "they may not participate in DORA on June 4, 2021, as they had not ordered the cups sold by [MMS], which take approximately 2 weeks to produce." Thomas also came to TLV and "expressed to restaurant employees and the manager, in front of customers," that Ari Gold, the CEO of Emanuel's, had accused her "of vandalizing his property with spray-painted swastikas" even though he "never accused anyone, let alone Ms. Thomas, of this hate crime," which had occurred in 2017. Gold and Emanuel's representative went to a city council meeting and expressed concerns about MMS's "apparent enforcement of the DORA legislation without any authority." The mayor said a city official or the city law director would call them the next day, but this did not occur.

{¶5} The complaint further alleged that the DORA application and resolution did not "delegate any authority to operate or enforce DORA to [MMS], or any other private

entity," or indicate that participating businesses had to buy cups from MMS, that the cups could only be manufactured and sold by a single entity, that the cups had to be compostable, or that businesses had to charge customers $1.00 per cup. The resolution only required the use of plastic cups that were "distinctly marked." MMS did not "have the authority to enforce legislation" in the City or "create additional restrictions regarding duly-passed city legislation," "wrongfully precluded some businesses, including Plaintiff, from participating in a city-authorized program designed to benefit downtown businesses," did not have "authority to usurp contract opportunities and create a monopoly under the guise of operating a city program," and "created a situation where certain businesses were able to benefit from the DORA program, while others were wrongfully excluded." And the City "failed to prevent [MMS] from assuming government functions and assuming governmental authority."

{¶6} The complaint set forth three counts. Counts One and Two incorporated "by reference all other material allegations" in the complaint and made additional allegations. Count One was titled "tortious interference with business relations" and alleged that MMS did not have "authority to impose additional restrictions on businesses willing to participate in DORA," "to enforce DORA legislation," or "to exclude businesses from the DORA program" and that MMS "wrongfully prevented [Emanuel's] from participating in the DORA program," causing Emanuel's to suffer damages. Count Two was titled "violation of O.R.C. 1331: rules against monopolies" and alleged that MMS "created a monopoly by requiring business owners to purchase cups through [MMS] only or be excluded from the DORA program, despite no legislative authority." Count Two further alleged that MMS caused "the cups to be sold at an inflated price well-above

market value, for the purported benefit of [MMS] and a fund [MMS] maintains," that this "monopoly also inured to the benefit of private manufacturers, a deal which was struck outside the confines of the government contract procurement process," and that the pricing scheme was not in the DORA application or resolution. Count Two also alleged that the City "allowed [MMS] to cause this monopoly" and that the monopoly caused Emanuel's to suffer damages. Count Three was titled "defamation and slander" and alleged that Thomas's false statement about Gold accusing her of vandalism caused Emanuel's damages.

{¶7} The complaint requested "preliminary injunctive relief preventing Marietta Main Street from continuing to enforce DORA legislation, impose additional restrictions not included in the legislation, and engage in a monopoly as detailed herein." The prayer for relief demanded "judgment against Defendants which will fairly and reasonably compensate Plaintiff for damages, plus interest, costs, and other such relief as this Court deems appropriate, and injunctive relief as stated herein."

{¶8} In July 2021, Emanuel's filed a "renewed motion for preliminary injunction" asking that MMS and the City be enjoined from certain conduct.[2] The defendants opposed this motion. The defendants also filed answers to the complaint and motions for judgment on the pleadings.

{¶9} The trial court granted the motions for judgment on the pleadings, denied the "Application for Preliminary Injunction" as moot, and dismissed the case. The court observed that it was "not entirely clear" whether Emanuel's asserted "all three causes of

---

[2] The City asserts that this motion only requested a preliminary injunction against MMS. However, the motion itself requests a preliminary injunction against both MMS and the City even though the "introduction" to Emanuel's memorandum in support of the motion, which the City quotes in its appellate brief, refers only to MMS.

action" in the complaint against the City. However, even if Emanuel's did, the City was "entitled to immunity from plaintiff's claims as a matter of law" under R.C. 2744.02(A)(1) "unless one of the exceptions in R.C. 2744.02(B)" applied. The court found that the facts in the complaint were "insufficient to establish any of the exceptions to immunity." The court also found the City immune from the Valentine Act claim under the state action doctrine. The court found that the claim for tortious interference with business relations against MMS and Thomas failed because the complaint did not allege (1) any prospective business relations with which they interfered, (2) that they actually interfered with any prospective business relations, (3) that they prevented Emanuel's from entering into any prospective business relations, (4) that any alleged interference was intentional, or that (5) Emanuel's suffered any damages. The court found the Valentine Act claim against MMS and Thomas failed because (1) the alleged antitrust violations were "not an unreasonable restraint of trade," (2) the complaint did not "allege an antitrust injury," and (3) MMS and Thomas were "immune under the state action doctrine." The court found that the defamation claim against Thomas failed because a corporation could not bring a claim for defamation based on "the alleged slander of its owners and officers," and the complaint failed to allege "special damages required for its *per quod* slander claim."

## II. ASSIGNMENTS OF ERROR

{¶10} Emanuel's presents three assignments of error:

**Assignment of [E]rror 1**: The trial court erred in granting Defendants' Motions for Judgment on the Pleadings, extending statutory immunity to nongovernmental Defendants ReSTORE Marietta, Inc. and Cristie Thomas, and extending immunity to the City of Marietta.

**Assignment of Error 2**: The trial court erred by dismissing the claim for tortious interference with business relations contrary to facts asserted in [the] complaint.

**Assignment of Error 3**: The trial court erred by dismissing the monopoly claim contrary to facts asserted in [the] complaint.

### III. STANDARD OF REVIEW

{¶11} "Appellate review of a judgment on the pleadings involves only questions of law and is therefore de novo." *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 8. Civ.R. 12(C) states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." " 'Dismissal is appropriate under Civ.R. 12(C) when (1) the court construes as true, and in favor of the nonmoving party, the material allegations in the complaint and all reasonable inferences to be drawn from those allegations and (2) it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief." *Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, ¶ 13, quoting *Reister v. Gardner*, 164 Ohio St.3d 546, 2020-Ohio-5484, 174 N.E.3d 713, ¶ 17.

### IV. R.C. CHAPTER 2744

{¶12} In its first assignment of error, Emanuel's contends the trial court erred by extending statutory immunity to the defendants.

### A. The City

{¶13} Emanuel's maintains that the trial court erred when it "categorically" dismissed the City "from the action based on its argument of governmental immunity protections as codified in Ohio Revised Code Chapter 2744." Emanuel's asserts that it requested two forms of relief in its complaint—"damages in tort" and injunctive relief,

which is a form of equitable relief.  Emanuel's suggests that the City is liable for damages for tortious interference with business relations and violation of the Valentine Act because the immunity exception in R.C. 2744.02(B)(2) for the negligent performance of acts with respect to proprietary functions applies.[3]  Emanuel's claims that "purchasing materials and setting prices for goods" are proprietary functions, so "neither the City, nor its alleged 'agents,' [MMS] and Ms. Thomas, are immune from the consequences of their actions in attempting to force business owners to purchase supplies from one and only one enumerated supplier, and require the customer to charge an extra dollar for DORA drinks, or for negligently allowing a private organization to attempt to enforce these restrictions on the public, especially when these restrictions are not supported by the underlying legislation."  Emanuel's also asserts that the trial court failed to consider that R.C. Chapter 2744 only provides political subdivisions immunity from tort claims for damages, not claims for equitable relief.  Emanuel's contends that "[e]ven if the trial court was persuaded to grant the City immunity from tort damages, it erred by extending this immunity to Plaintiff's claims in equity, contrary to established Ohio law."

{¶14}  "R.C. Chapter 2744, the Political Subdivision Tort Liability Act, sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees."  *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, 144 N.E.3d 369, ¶ 20.  " 'Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a familiar, three-tiered analysis.' "  *Id.*, quoting *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 15.  The

---

[3] Emanuel's divided its first assignment of error into subsections related to the City and to MMS and Thomas.  Emanuel's only made its proprietary function arguments under the subsection related to MMS and Thomas even though these arguments also mention the City.

first tier "involves the general grant of immunity to political subdivisions by R.C. 2744.02(A)(1), which provides that 'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' "  *Id.* at ¶ 21.  The second tier "involves determining whether any of the five exceptions to immunity that are listed in R.C. 2744.02(B) apply to expose the political subdivision to liability."  *Id.* at ¶ 22.  "If any one of the five exceptions to immunity in R.C. 2744.02(B) applies and if any defenses that may be asserted by the political subdivision under R.C. 2744.02(B)(1) do not apply, then the third tier of the sovereign-immunity analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply to reinstate the political subdivision's immunity."  *Id.* at ¶ 23.

{¶15}  Emanuel's does not dispute that the City is a political subdivision or that the claims against the City for damages for tortious interference with business relations and violation of the Valentine Act fall within the general grant of immunity under R.C. 2744.02(A)(1).  Rather, Emanuel's asserts that the exception to immunity in R.C. 2744.02(B)(2) applies.  That provision states that with exceptions not relevant here, "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."  R.C. 2744.02(B)(2).

{¶16}  Even if the conduct alleged in the complaint involved proprietary functions, which the City disputes, the R.C. 2744.02(B)(2) immunity exception would not apply to expose the City to liability for damages because that exception applies only to negligent

conduct.    Although Emanuel's appellate brief characterizes the City's conduct as negligent, tortious interference with a business relationship requires " 'an *intentional* interference causing a breach or termination of' " a business relationship.   (Emphasis added.)  *DeepRock Disposal Solutions, LLC v. Forté Prods., LLC*, 4th Dist. Washington No. 20CA15, 2021-Ohio-1436, ¶ 107, quoting *Martin v. Jones*, 2015-Ohio-3168, 41 N.E.3d 123, ¶ 63 (4th Dist.).   Moreover, with respect to the Valentine Act claim, Emanuel's suggests its complaint alleged a violation of R.C. 1331.01(C)(1), which defines a "trust," which R.C. 1331.01(C)(4) makes "unlawful and void." However, R.C. 1331.01(C)(1) defines a "trust" as "a combination of capital, skill, or acts by two or more persons for any of the [statutorily enumerated] purposes."   (Emphasis added.)   Because the R.C. 2744.02(B)(2) immunity exception does not apply to intentional or purposeful conduct, the exception is not applicable to the claims against the City for damages for tortious interference with business relations and violation of the Valentine Act.  Emanuel's does not argue that any other immunity exception applies; therefore, Emanuel's has not shown that the trial court erred when it found the City immune from liability for damages under R.C. Chapter 2744.

{¶17}  In addition, the trial court did not improperly extend statutory immunity to the City for a claim for equitable relief.  Although R.C. 2744.02(A)(1) does not state that political subdivisions are immune from claims for equitable relief, the complaint did not include any such claims against the City.  Emanuel's did file a motion for a preliminary injunction against the City and MMS, which Emanuel's originally requested against only MMS in the complaint.  However, while a preliminary injunction is "an equitable remedy," it is "an impermanent one." *Community First Bank & Trust v. Dafoe*, 108 Ohio St.3d 472,

2006-Ohio-1503, 844 N.E.2d 825, ¶ 28. "[A] preliminary injunction proceeding is parallel, expedited, and separate from the main action. A preliminary injunction aids the main action by ensuring that a judgment in the main action will be meaningful." *Id.* "Unlike permanent injunctions, a preliminary injunction is not intended as a remedy for a litigant on the merits of a claim." *Hosta v. Chrysler*, 172 Ohio App.3d 654, 2007-Ohio-4205, 876 N.E.2d 998, ¶ 31. "The goal of a preliminary injunction is to preserve the status quo pending final determination of the matter." *State Employment Relations Bd. v. Youngstown*, 7th Dist. Mahoning No. 20 MA 0060, 2021-Ohio-4552, ¶ 17. Preliminary injunctions " 'are generally regarded as being superseded by a final judgment that is rendered on the merits in the underlying controversy' " and are therefore "not enforceable after final judgment has been entered." *Hosta* at ¶ 31, quoting *Burns v. Daily*, 114 Ohio App.3d 693, 708, 683 N.E.2d 1164 (1996). Therefore, the trial court correctly denied as moot the motion for preliminary injunction against the City when the court made a final determination of the claims against the City in the complaint.

{¶18} We observe that in *Kline v. Davis*, 4th Dist. Lawrence Nos. 00CA32 & 01CA13, 2001 WL 1590658 (Dec. 11, 2001), the plaintiff filed a complaint "seeking money damages, along with a request for a preliminary injunction and temporary restraining order." *Kline* at *1. The plaintiff alleged violations of the Ohio Sunshine Law, the Public Records Act, and the Open Meetings Act. *Id.* The trial court granted the defendants' motion for summary judgment "based on sovereign immunity." *Id.* We held that because R.C. Chapter 2744 does not apply to actions for equitable relief, the defendants "were not entitled to 'judgment as a matter of law' on [the plaintiff's] request for an injunction." *Id.* at *2. Therefore, we held that the trial court erred in part in granting the summary judgment

motion and remanded to the trial court with instructions to "proceed with a disposition of [the plaintiff's] claims for injunctive relief." *Id.* at *1. *Kline* is distinguishable from this case. Even though it appears that the plaintiff in *Kline* explicitly requested only a preliminary injunction, the trial court had a statutory duty to issue a permanent injunction if a violation of the Ohio Sunshine Law occurred. *Id.* at *3, citing R.C. 121.22(I)(1) ("Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions"). This case does not involve an alleged violation of the Ohio Sunshine Law, and we are not aware of any statutory provision which would have required the trial court to issue a permanent injunction against the City in this case even though Emanuel's did not request one.

{¶19} For the foregoing reasons, we overrule the portion of the first assignment which asserts the trial court erred by extending statutory immunity to the City.

### B. MMS and Thomas

{¶20} Emanuel's also maintains that the trial court erred by extending immunity to MMS and Thomas under R.C. Chapter 2744. However, Emanuel's misreads the trial court's decision. The court did not find MMS and Thomas immune from liability for any claims under R.C. Chapter 2744. The only immunity the court found MMS and Thomas were entitled to was immunity under the state action doctrine for the Valentine Act claim. Therefore, we also overrule the remaining portion of the first assignment of error which asserts the trial court erred by extending statutory immunity to MMS and Thomas.

### V.  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

**{¶21}**  In its second assignment of error, Emanuel's contends that the trial court erred "by dismissing the claim for tortious interference with business relations contrary to facts asserted in [the] complaint."  Although the assignment of error is broadly worded, the arguments under it challenge only the trial court's reasons for dismissing the tortious interference claim against MMS and Thomas.  Emanuel's asserts that the complaint alleged sufficient facts to survive a Civ.R. 12(C) motion.  Emanuel's maintains that "[f]rom the facts as pled, reasonable minds could deduce intent and impropriety on behalf of Defendants."  Emanuel's claims that it "alleges that Defendants wrongfully attempted to prohibit it from participating in a city program that it was otherwise authorized to participate in by the State Department of Liquor Control."  MMS and Thomas did not include Emanuel's in private emails about the DORA program, and based on the facts alleged in the complaint, Thomas "appears to have personal animosity toward Plaintiff's affiliates, potentially accounting for this omission."  Emanuel's asserts that it "alleges damages in the form of lost sales" due to the attempts of MMS and Thomas to "exclude" Emanuel's "from the city program" and their omission of Emanuel's from published lists of "approved" locations to buy DORA drinks.

**{¶22}**  " 'The elements of tortious interference with a business relationship are: (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.' "  *DeepRock Disposal Solutions*, 4th Dist. Washington No. 20CA15, 2021-Ohio-1436, at ¶ 107, quoting *Martin*, 2015-Ohio-3168, 41 N.E.3d 123, at ¶ 63. "Tortious interference with a business relationship is similar to tortious interference with

a contract, but the result of the interference does not require the breach of contract.  It is sufficient to prove that a third party does not enter into or continue a business relationship with the plaintiff."  *Martin* at ¶ 63.

{¶23}  The trial court gave five grounds for granting MMS and Thomas judgment on the pleadings with respect to the tortious interference with business relations claim. One ground was that the complaint failed to allege any prospective business relations with which they interfered.  Emanuel's suggestion that it is sufficient that one can infer from its complaint that MMS and Thomas interfered with its business relationships with members of the public by preventing it from participating in the DORA program is not well-taken.  A vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim for tortious interference with a business relationship.  *Wilkey v. Hull*, 366 Fed.Appx. 634, 638 (6th Cir.2010).  *See generally One Energy Ents., LLC v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 17AP-829, 2019-Ohio-359, ¶ 75-76 ("vague reference to hypothetical future contracts and business relationships" insufficient to state claim for tortious interference with prospective business relationships); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla.1994) ("no cause of action exists for tortious interference with a business's relationship to the community at large"); *McCreight v. AuburnBank*, ___ F.Supp.3d ___, 2020 WL 1061675, *4 (M.D.Ala.2020), quoting *Glennon v. Rosenblum*, 325 F.Supp.3d 1255, 1267 (N.D.Ala.2018) (plaintiff alleging tortious interference with a business relationship must "allege a specific relationship" the defendant interfered with because "[n]obody has a 'legally protectable relationship with every potential participant in their local market' ").

**{¶24}** "[I]n any appeal, including this appeal, the appellant bears the burden to demonstrate error on the part of the trial court." *State v. West*, 4th Dist. Highland No. 14CA7, 2015-Ohio-2139, ¶ 4. Emanuel's did not meet its burden with respect to the trial court's finding that the complaint failed to allege any prospective business relations with which MMS and Thomas interfered. Therefore, we conclude that the trial court did not err when it dismissed the tortious interference claim against MMS and Thomas on that ground and that it is unnecessary for us to address the alternative grounds for that ruling. We overrule the second assignment of error.

## VI. VALENTINE ACT

**{¶25}** In its third assignment of error, Emanuel's contends that the trial court erred "by dismissing the monopoly claim contrary to facts asserted in [the] complaint." Emanuel's maintains that "[t]he elements of a monopoly as defined by the Valentine Act are sufficiently pled in the complaint to survive a Rule 12 motion." Emanuel's asserts that MMS and Thomas "argue governmental immunity from" the Valentine Act claim "based on a claimed contractual relationship with the City of which there is no evidence. However, by definition in the Act, a 'person' includes corporations, partnerships, and associations." Emanuel's also asserts that the United States Supreme Court "has established that a municipal corporation can also be a 'person' for the purpose of statutory analysis" and that the Supreme Court of Ohio "has stated that when a political subdivision acts in a proprietary nature, there is less justification for affording it immunity * * *."

**{¶26}** In addition, Emanuel's contends that even though "the DORA expanded * * * trade," Emanuel's "does not argue the DORA itself violates the Valentine Act, rather, Defendants' actions in attempting to force business owners to purchase materials from

one supplier without any legal or rational justification is the unreasonable restraint on trade, and must be quashed." (Emphasis deleted.) Emanuel's maintains that the DORA resolution does not mandate that businesses buy cups from MMS, "require business owners to charge customers an additional dollar for DORA drinks," or state that the profit from cup sales "inures to the benefit" of the City, MMS, and the manufacturer. According to Emanuel's, there is "an unreasonable restraint on trade for the businesses as described in the Plaintiff's Complaint, as the cost per cup including shipping exceeds $1.00, and plastic cups are readily available from any number of suppliers for significantly less money, and may very well be already in the business's inventory." Emanuel's maintains that decisions about "where to purchase supplies and how much to charge belong to the business owners," and that "Defendants have no authority to make these decisions for local businesses."

## A. Statutory Provisions

{¶27} "Ohio's antitrust statutes, known as the Valentine Act, are contained in R.C. Chapter 1331, which is entitled 'Monopolies.' " *Aladdins Lights Inc. v. Eye Lighting Internatl.*, 2017-Ohio-7229, 96 N.E.3d 864, ¶ 13 (9th Dist.). R.C. 1331.01(C)(1) states:

(1) "Trust" is a combination of capital, skill, or acts by two or more persons for any of the following purposes:

(a) To create or carry out restrictions in trade or commerce;

(b) To limit or reduce the production, or increase or reduce the price of merchandise or a commodity;

(c) To prevent competition in manufacturing, making, transportation, sale, or purchase of merchandise, produce, or a commodity;

(d) To fix at a standard or figure, whereby its price to the public or consumer is in any manner controlled or established, an article or commodity of

merchandise, produce, or commerce intended for sale, barter, use, or consumption in this state;

(e) To make, enter into, execute, or carry out contracts, obligations, or agreements of any kind by which they bind or have bound themselves not to sell, dispose of, or transport an article or commodity, or an article of trade, use, merchandise, commerce, or consumption below a common standard figure or fixed value, or by which they agree in any manner to keep the price of such article, commodity, or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of an article, commodity, or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, purchasers, or consumers in the sale or transportation of such article or commodity, or by which they agree to pool, combine, or directly or indirectly unite any interests which they have connected with the sale or transportation of such article or commodity, that its price might in any manner be affected;

(f) To refuse to buy from, sell to, or trade with any person because such person appears on a blacklist issued by, or is being boycotted by, any foreign corporate or governmental entity.

"A trust as defined in this division is unlawful and void." R.C. 1331.01(C)(4). And R.C. 1331.08 authorizes "the person injured in the person's business or property by another person by reason of anything forbidden or declared to be unlawful in [R.C. 1331.01 to 1331.14]" to "sue therefor" and "recover treble the damages sustained by the person and the person's costs of suit."

### B. The City

**{¶28}** The trial court found that the City was immune from the Valentine Act claim under both R.C. 2744.02(A)(1) and the state action doctrine. In its arguments under the third assignment of error, Emanuel's asserts that the Supreme Court of Ohio "has stated that when a political subdivision acts in a proprietary nature, there is less justification for affording it immunity * * *." To the extent Emanuel's is implying that the City is not immune under R.C. 2744.02(A)(1) because the R.C. 2744.02(B)(2) immunity exception related to

proprietary functions applies, we already rejected that contention in Section IV.A. of this decision.

**{¶29}** Emanuel's also suggests that the City qualifies as a "person" who can violate the Valentine Act, asserting that the United States Supreme Court "has established that a municipal corporation can also be a 'person' for purpose of statutory analysis * * *." Though unclear, Emanuel's may be implying that the City is not immune under R.C. 2744.02(A)(1) because the immunity exception in R.C. 2744.02(B)(5) applies. R.C. 2744.02(B)(5) states that "a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *." However, "to 'expressly' impose liability on a political subdivision, a statute must state that a political subdivision is liable and not simply recite that some general category of persons is liable." *Student Doe v. Adkins*, 2021-Ohio-3389, 178 N.E.3d 947, ¶ 61 (4th Dist.) Emanuel's does not direct our attention to any such provision in the Valentine Act.

**{¶30}** Emanuel's has not shown that the trial court erred when it found the City immune under R.C. 2744.02(A)(1). Consequently, even if any of Emanuel's arguments under the third assignment of error could be construed to challenge the court's alternative finding that the City is immune under the state action doctrine, it would be unnecessary for us to address them. Accordingly, we overrule the third assignment of error insofar as it challenges the dismissal of the Valentine Act claim against the City.

### C.  MMS and Thomas

**{¶31}** The trial court gave three grounds for granting MMS and Thomas judgment on the pleadings with respect to the Valentine Act claim. First, the court found the alleged

antitrust violations were not an unreasonable restraint of trade.  The court explained that

to establish the Valentine Act claim, Emanuel's had to show a combination of effort by

two or more actors that unreasonably restrained trade in a relevant market but could not

because the City's DORA program expanded, rather than restrained, trade.  And "even if

the DORA somehow restrained trade," it did "not do so unreasonably" because the City

exercised its authority under R.C. 4301.82 "to regulate the containers used in the DORA

program by deciding that participating businesses must use the official cup chosen by the

City" and chose "to implement its DORA, including the sale of its 'official cup' to qualified

businesses, by partnering with nonprofit MMS, a permissible arrangement under Ohio

law."  The court further stated:  "Plaintiff cites no legal authority that the regulations

imposed to carry out Marietta's DORA—by which trade is expanded—are an

unreasonable restraint of trade."

{¶32}  Second, the court found that the complaint failed to allege an antitrust injury,

stating:

> To establish standing to assert a claim under the Valentine Act, "a plaintiff must prove the existence of antitrust injury, which is to say injury of the type the antitrust laws intended to prevent and that flows from that which makes defendants' acts unlawful."  *See Acme Wrecking Co. v. O'Rourke Constr. Co.*, 1995 Ohio App. LEXIS 745, at *6 (1st Dist. March 2, 1995) quoting *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).  This requirement "ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior."  *See id.* (emphasis in original).  Thus, the Complaint "must allege an injury to the market, not just a personal injury."  *Caudill v. Lancaster Bingo Co.*, 2005 U.S. Dist. LEXIS 24621, at *18 (S.D. Ohio Oct. 24, 2005).
>
> Plaintiff fails to allege that the requirement to purchase official cups for $0.90 *reduced* competition among establishments in the DORA zone or caused an injury to the market.  By suspending Ohio's Open Container laws for certain days and times within the DORA zone, the City granted qualified businesses permission to conduct otherwise unlawful activity—selling alcohol to be consumed outdoors—which *created* a market for such activity.

> Qualifying businesses are all subject to the same requirements to participate in DORA, and thus, are all on equal footing. Thus, Plaintiff failed to allege an antitrust injury: under no set of facts can Plaintiff establish that the City's DORA—implemented to *expand* business activity for qualifying businesses—*reduced* competition among such businesses. *See Caudill*, 2005 U.S. Dist. LEXIS 24621, at *18-19 (granting motion for judgment on the pleadings on Plaintiff's antitrust claim because the complaint "is void of any allegations as to how the market has changed or been damaged as a result of their inability to compete," and "fails to identify any competitors . . . describe the market . . . [or] discuss any market conditions.")

(Emphasis and alteration sic.)  And third, the court found that even if Emanuel's "could make a showing of an antitrust claim," MMS and Thomas were immune under the state action doctrine.

**{¶33}** Although Emanuel's generally challenges the grant of judgment on the pleadings to MMS and Thomas with respect to the Valentine Act claim, we are unable to discern any arguments under the third assignment of error which specifically challenge the trial court's determination that the complaint failed to allege an antitrust injury. Emanuel's arguments appear to focus on the trial court's alternative conclusions that the alleged antitrust violations were not an unreasonable restraint of trade and that MMS and Thomas have immunity.  At no point does Emanuel's mention the topic of antitrust injury, address the legal authority the trial court cited on that topic, cite any other legal authority on that topic, or address the trial court's point that requiring all qualifying business to comply with the same requirements to participate in the newly created market for DORA drinks in downtown Marietta could not reduce competition where none existed before.

**{¶34}** As previously stated, "in any appeal, including this appeal, the appellant bears the burden to demonstrate error on the part of the trial court."  *West*, 4th Dist. Highland No. 14CA7, 2015-Ohio-2139, ¶ 4.  Emanuel's has not demonstrated error in the trial court's finding that the complaint failed to allege an antitrust injury.  Accordingly, we

conclude that the trial court did not err in granting MMS and Thomas judgment on the pleadings on that ground with respect to the Valentine Act claim and that it is unnecessary for us to address the alternative grounds for that ruling. Therefore, we overrule the remainder of the third assignment of error, which challenges the dismissal of the Valentine Act claim against MMS and Thomas.

## VII. CONCLUSION

**{¶35}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
          Michael D. Hess, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**