[Cite as *Fortis Capital, Ltd. v. Mancini*, 2025-Ohio-31.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Fortis Capital, Ltd. et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 24AP-171 |
| v. | : | (C.P.C. No. 23CV-6218) |
| Mandy Mancini et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 7, 2025

**On brief:** *Dinsmore & Shohl, LLP, Jennie K. Ferguson, Gregory P. Mathews, Justin M. Burns,* and *H. Devon Collins,* for appellants.

**On brief:** *Luper Niedenthal & Logan, LPA, Douglas J. Segerman,* and *Kyle T. Anderson,* for appellee Consultants Realty, LLC.

**On brief:** *Whitt Sturtevant LLP,* and *Mark A. Whitt,* for appellees Mandy Mancini, Mandy Mancini, LLC, The Team Columbus, LLC, and KW Urban Living, LLC.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Plaintiffs-appellants, Fortis Capital, Ltd. ("Fortis"), and Michael Casey, appeal the judgment of the Franklin County Court of Common Pleas, which granted in part and denied in part: (1) a Civ.R. 12(B)(6) and 12(B)(7) motion to dismiss filed by defendants-appellees, Mandy Mancini, Mandy Mancini, LLC, The Team Columbus, LLC, and KW Urban Living, LLC, and (2) a Civ.R. 12(B)(6) motion to dismiss and Civ.R. 19(A) motion for joinder of non-party GVMRE LLC dba Re/Max Connection ("Re/Max") filed by defendant-

appellee Consultants Realty, LLC.  More specifically, the trial court granted in part and denied in part the Civ.R. 12(B)(6) motions to dismiss and denied the motions made pursuant to Civ.R. 12(B)(7) and 19(A).

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2}    As it was required to do, the trial court accepted as true the facts Casey and Fortis alleged in their amended complaint and made all reasonable inferences in favor of Casey and Fortis for the purpose of ruling on defendants' Civ.R. 12(B)(6) motions to dismiss.  We likewise take the following facts from the amended complaint.

{¶ 3}    Casey is a licensed Ohio real estate salesperson who "operates his real estate business as a registered supervisee" of Re/Max, a licensed real estate broker.  (Oct. 25, 2023 Am. Compl. at ¶ 7.)  Casey largely runs his real estate operations through Fortis, an Ohio limited liability company he founded to provide real estate services in downtown Columbus and surrounding communities, and of which he is the sole owner.  Casey and Fortis maintain that all the factual allegations regarding their real estate business concern "actions taken by * * * Casey as a real estate salesperson under the supervision of his licensed real estate broker[,]" Re/Max.  *Id*. at ¶ 8.

{¶ 4}    Mancini is a licensed real estate salesperson who began working with Casey in 2016. Mandy Mancini, LLC, and The Team Columbus, LLC are Ohio limited liability companies that Mancini established and operates in furtherance of her real estate business. Mancini is the statutory agent of KW Urban Living, LLC.

{¶ 5}    On December 11, 2020, Mancini and Mandy Mancini, LLC executed an Agent Agreement—in which they were referred to jointly, severally, and collectively as "Agent"—

with Casey, Re/Max, Casey Properties and Associates, LLC[1], Michael Casey Associates[2], Fortis, and their successors and assigns—who were collectively referred to in the Agent Agreement as the "Company." Contrary to Casey and Fortis's characterization of the Agent Agreement as "an employment agreement," *id*. at ¶ 33, and of Mancini as a Fortis employee, the Agent Agreement expressly established an independent-contractor relationship between the parties, stating, "Agent is engaged as an independent contractor and as such has complete control and discretion as to the means of achieving the services provided to and/or on behalf of the Company." *Id*., Ex. B. at ¶ 8. Casey and Fortis maintain that, after entering into the Agent Agreement, Mancini gained access to their confidential and proprietary resources, including Casey's "proprietary and confidential client leads," *id*. at ¶ 35, and "proven real estate strategies and personal analyses of Central Ohio urban and downtown real-estate markets." *Id*. at ¶ 57.

{¶ 6} The Agent Agreement contained non-solicitation and non-competition provisions, by which Mancini agreed not to engage in the following activities during her association with the Company and for three years thereafter:

> [E]ither directly or indirectly, individually or through a third party, cause, facilitate, encourage or participate in any of the following: (a) share, distribute, publish, disseminate or otherwise make known to any person or entity any Protected Information; (b) contact, call on, solicit and/or provide any real estate brokerage or related services to any Company Client; (c) provide any real estate brokerage or related services within a 5-mile radius of 1 Capital Square Columbus, Ohio 43215, including but not limited to [enumerated] communities (collectively, the "Protected Area"); (c) [sic] enter[] into competitive employment or seek[] to provide competitive real estate brokerage or related services within the Protected Area; (d) enter[] into competitive employment or seek[] to provide competitive real estate brokerage or related services with [eight

---

[1] Casey Properties and Associates, LLC, was dissolved effective October 18, 2022.
[2] Michael Casey Associates "was informally used as a trade name for Michael Casey's real estate business but is not (and was never) an independent legal entity." (Am. Compl. at ¶ 26.)

> identified real estate development projects]; and/or (e) contact, solicit, or attempt to solicit any independent contractor, employee, agent and/or vendor to leave the Company, or reduce their work hours dedicated to the Company, or provide services to another entity and/or individual engaged in the provision of real estate brokerage and/or related services.

*Id.*, Ex. B. at ¶ 5. Mancini agreed that "all leads related to real estate brokerage and related services received by Agent * * * are the sole and exclusive property of the Company," and that she would return to the Company "all such leads along with all Protected Information and all company property" within a week of terminating her business relationship with the Company. *Id.*, Ex. B. at ¶ 7.

{¶ 7} The Agent Agreement contained a liquidated-damages provision, which states, "Agent shall pay to the Company $100,000 for each independent contractor, employee, agent, and/or vendor who leaves the Company or reduces their work hours dedicated to the Company or provides services to another entity and/or individual engaged in the provision of real estate brokerage and/or related services * * * and fifty percent (50%) of the commission paid for each Company Client closing that the Company determines occurred in violation of this Section 5 (whether closed by Agent, or any affiliate of Agent)." *Id.*, Ex. B. at ¶ 5.

{¶ 8} The same day she executed the Agent Agreement, Mancini entered into a separate Confidentiality and Non-Disclosure Agreement ("Confidentiality Agreement") with Casey, Casey Properties and Associates, and Michael Casey Associates. By that agreement, Mancini agreed not to disclose without express written consent confidential information, as defined therein, and not to use or reproduce such confidential information other than as approved in writing by Casey.

{¶ 9}   Mancini terminated her business association with Casey and Fortis on or about August 31, 2022.  She thereafter began working with defendant-appellee, Consultants Realty, LLC, an Ohio limited liability real estate company that serves the Columbus urban market and surrounding areas and that operates in the downtown Columbus market under the trade name Urban Living Consultants.  Casey and Fortis allege that Consultants Realty, LLC is a direct competitor in the Protected Area described in the Agent Agreement.

{¶ 10}  Casey and Fortis initially filed a complaint against Mancini, Mandy Mancini, LLC, The Team Columbus, LLC, Consultants Realty, LLC, and KW Urban Living, LLC in August 2023, but they amended their complaint on October 25, 2023. The amended complaint sets out claims against Mancini for breach of contract, misappropriation of trade secrets, breach of duty of loyalty, and conversion, and against the corporate defendants for tortious interference with contract and tortious interference with business relationships.

{¶ 11} Casey and Fortis allege that Mancini is directly competing with them, in violation of the Agent Agreement, by providing the same services she provided to clients while working with Casey and Fortis.  They allege that Mancini downloaded Casey and Fortis's confidential and proprietary client and lead information onto her personal devices from January through August 2022, in violation of the Confidentiality Agreement.  They maintain that Mancini has used the confidential and proprietary information she obtained to solicit Casey and Fortis's clients, including those located in the Protected Area defined in the Agent Agreement, on behalf of her real estate business and affiliation with Consultants Realty, LLC.  They further allege that Mancini has contacted "Company Clients," as defined in the Agent Agreement, for the purpose of soliciting their business, in violation of the Agent Agreement.  And they maintain that Mancini "has repeatedly marketed herself and her affiliated real estate entity competitors within the Protected Area in violation of the Agent

Agreement." (Am. Compl. at ¶ 81.) Casey and Fortis allege that the corporate defendants intentionally, willfully, and maliciously acted in concert with Mancini to breach the Agent Agreement and Confidentiality Agreement and that, despite knowledge of the Agent agreement, "Mancini and Consultants Realty refuse to abide by Mancini's contractual obligations under the Agent Agreement and cease any tortious interference with the Agent Agreement." *Id.* at ¶ 92.

{¶ 12} In addition to compensatory and punitive damages, the amended complaint requests injunctive relief:

> (A) restraining and enjoining Mancini from directly or indirectly rendering real estate services or other services similar to the type of business Plaintiffs conduct for a period of thirty-six (36) months within the Protected Area (defined *supra*); (B) restraining and enjoining Mancini from violating any terms of her Agreement with Plaintiffs; and (C) enjoining Mancini and all those in active concert with Mancini from retaining and ordering them to return client information, proprietary information, client leads, records, files and other documents and information that are the property of Plaintiffs or were used or obtained in the course of Mancini's employment with Fortis or otherwise using credentials given to Mancini by virtue of her employment with Fortis[.]

(Oct. 25, 2023 Am. Compl. at 31.)

{¶ 13} Attached to the amended complaint are copies of the Agent Agreement and Confidentiality Agreement, as well as an Assignment and Assumption of Agent Agreement ("Assignment Agreement"), by which Casey and Fortis contend that Re/Max assigned its rights under the Agent Agreement, including the right to bring legal claims on its behalf, to Casey and Fortis. The Assignment Agreement, signed in October 2023, states that it is effective December 11, 2020, the date of the Agent Agreement.

{¶ 14} On September 6, 2023, before filing their amended complaint, Casey and Fortis filed a motion for preliminary injunction. The trial court referred the matter to a

magistrate for a preliminary injunction hearing, but no hearing was held, and the trial court did not rule on the motion for a preliminary injunction.

{¶ 15} Mancini, Mandy Mancini, LLC, The Team Columbus, LLC, and KW Urban Living, LLC filed a joint motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6) and 12(B)(7), for failure to state a claim upon which relief can be granted and for failure to join necessary parties. They argued that the amended complaint was subject to dismissal for failure to name Re/Max as a necessary party, that the Assignment Agreement was an ineffective sham, and that Casey and Fortis's claims based on the Agent Agreement were barred by R.C. 4735.21. They also argued that the amended complaint failed to state claims for misappropriation of trade secrets, breach of duty of loyalty, and conversion. Mandy Mancini, LLC , The Team Columbus, LLC, and KW Urban Living, LLC argued that R.C. 4735.21 barred Casey and Fortis's claims for tortious interference with contract and business relationships against them, that Mandy Mancini, LLC could not tortiously interfere with the Agent Agreement to which she was a party, and that the amended complaint did not allege sufficient facts to state tortious-interference claims. Consultants Realty, LLC filed its own motion to dismiss, pursuant to Civ.R. 12(B)(6) and, in the alternative, a motion pursuant to Civ.R. 19(A) to join Re/Max as a necessary party.

{¶ 16} On March 1, 2024, the trial court issued an order granting in part defendants' Civ.R. 12(B)(6) motions to dismiss, denying the Civ.R. 12(B)(7) motion to dismiss, and denying Consultants Realty, LLC's motion for joinder of Re/Max.

{¶ 17} The trial court dismissed all claims based on the Assignment Agreement, which it determined was void, as against the public policy set out in R.C. Chapter 4735. Particularly, it cited R.C. 4735.21, which prohibits a real estate salesperson from collecting any money in connection with a real estate transaction and from suing for compensation in

connection with a real estate transaction. Under R.C. 4735.21, only a licensed real estate broker may collect compensation for the performance of the acts assigned to real estate brokers in R.C. 4735.01. The trial court held that because neither Casey nor Fortis is a licensed real estate broker, they may not enforce—even by assignment—rights that by statute may be exercised only by a licensed broker, like Re/Max.

{¶ 18} Next, to the extent the Agent Agreement provided Casey and Fortis with independent rights, the trial court found the Agent Agreement also void as against the public policy set out in R.C. 4735.21. The Agent Agreement stated that the Company engaged in the business of providing real estate brokerage services, but Re/Max—a non-party to this action—was the only real estate broker that was a party to the Agent Agreement. The trial court stated that, although Casey was entitled to engage in R.C. 4735.01 activities in association with his broker, Re/Max, neither he nor Fortis could have an independent right to sue with respect to real estate brokerage services. In other words, neither Casey nor Fortis could obtain broker rights by contract.

{¶ 19} With respect to Casey and Fortis's claims under the Confidentiality Agreement, the trial court dismissed Fortis's claims, because Fortis was not a party to the Confidentiality Agreement, but held that Casey's claims under that agreement could proceed, to the extent they involved non-brokerage activity, outside the scope of R.C. 4735.01. The trial court therefore denied Mancini's motion to dismiss Casey's breach of contract claim under the Confidentiality Agreement.

{¶ 20} The trial court held that Casey's tortious interference claims could proceed, to the extent they are based on the Confidentiality Agreement, but Fortis's tortious interference claims could not proceed, because Fortis was not a party to the Confidentiality Agreement.

**{¶ 21}** The trial court denied Mancini's motion to dismiss the claims for misappropriation of trade secrets and claims based on the duty of loyalty/faithless servant doctrine. It also denied Mancini's motion to dismiss the conversion claim, but only to the extent it was not based on the Agent Agreement.

**{¶ 22}** Finally, the trial court denied Consultants Realty, LLC's alternative motion to join Re/Max. Having determined that neither Fortis nor Casey was entitled to enforce the Agent Agreement, the trial court stated that Re/Max's absence was "not an impediment to complete relief for any party, does not impede any party's ability to protect their interests, and subjects no parties to any risk of incurring multiple or inconsistent obligations." (Mar. 1, 2024 Journal Entry at 17.)

**{¶ 23}** The March 1, 2024 journal entry left unresolved Casey's claim for breach of the Confidentiality Agreement based on non-brokerage activity, Casey and Fortis's claims for misappropriation of trade secrets, Fortis's claim for breach of the duty of loyalty, Casey and Fortis's conversion claim, to the extent it is not based on the Agent Agreement, and Casey's claims for tortious interference with contract and business relationships, to the extent they relate to the Confidentiality Agreement. The trial court did not include in its journal entry an express determination under Civ.R. 54(B) that there was "no just reason for delay."

**{¶ 24}** The trial court did not rule on Casey and Fortis's motion for a preliminary injunction.

**{¶ 25}** Casey and Fortis appeal the trial court's March 1, 2024 journal entry and raise a single assignment of error: "The trial court erred in denying plaintiffs' claims for injunctive relief under the Agent Agreement and the Assignment and Assumption of Agent Agreement."

**II. ANALYSIS**

{¶ 26} Before considering the merits of Casey and Fortis's assigned error, we must first determine the jurisdictional question whether the trial court's March 1, 2024 journal entry granting in part and denying in part the motions to dismiss and denying the motion for joinder is a final appealable order. *See DeAscentis v. Margello*, 10th Dist. No. 04AP-4, 2005-Ohio-1520, ¶ 15.

{¶ 27} The jurisdiction of Ohio's courts of appeals is limited; they have appellate jurisdiction only "to review and affirm, modify, or reverse judgments or final orders." Article IV, Section 3(B)(2), Ohio Constitution. "A final order is one that 'dispos[es] of the whole case or some separate and distinct branch thereof.' " *Mill Creek Metro. Park Dist. Bd. of Commrs. v. Less*, 172 Ohio St.3d 24, 2023-Ohio-2332, ¶ 8, quoting *Lantsberry v. The Tilley Lamp Co., LTD.*, 27 Ohio St.2d 303, 306 (1971). "Generally, an order 'that leaves issues unresolved and contemplates further action is not a final, appealable order.' " *Id.*, quoting *VIL Laser Sys., L.L.C. v. Shiloh Indus., Inc.*, 119 Ohio St.3d 354, 2008-Ohio-3920, ¶ 8. If a trial court's order is not final and appealable, a reviewing court has no jurisdiction to review it and must dismiss the appeal. *Id.*

{¶ 28} An appellate court engages in a two-step analysis to determine whether an order is final and appealable. First, it determines whether the order fits within one of the categories of final orders set out in R.C. 2505.02(B). *Hogan v. Ohio Adult Parole Auth.*, 10th Dist. No. 23AP-471, 2024-Ohio-307, ¶ 11, citing *Ohio Farmers Ins. Co. v. Bd. of Cty. Commrs. of Stark Cty.*, 10th Dist. No. 10AP-164, 2011-Ohio-2942, ¶ 18. Second, if the order is a final order under R.C. 2505.02, the court must determine whether Civ.R. 54(B) applies and, if so, whether the order contains a certification by the trial court that there is no just

reason for delay.[3] *Id.*, citing *Trico Land Co., L.L.C. v. Kenoil Producing, L.L.C.*, 5th Dist. No. 13CA001, 2013-Ohio-2065, ¶ 17.

{¶ 29} Casey and Fortis acknowledge in their joint appellate brief that the trial court's March 1, 2024 journal entry does not dispose of all their claims, but they argue it nevertheless constitutes a final order under R.C. 2505.02(B)(4), which includes as "a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial":

> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

A "provisional remedy" is "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction[.]" R.C. 2505.02(A)(3).

{¶ 30} Casey and Fortis sought a preliminary injunction "pursuant to the [p]arties' Agent Agreement * * * to prevent Mancini from continuing her unfair competition in violation of the parties' agreement." (Sept. 6, 2023 Mot. for Prelim. Inj. at 1.) A preliminary injunction is a "temporary injunction issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case." *Black's Law*

---

[3] Civ.R. 54(B) provides:
When more than one claim for relief is presented in an action * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision * * * which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

*Dictionary* (11th Ed.2019). It is "interlocutory, tentative, and impermanent in nature." *Youngstown City School Dist. Bd. of Edn. v. State*, 10th Dist. No. 15AP-941, 2017-Ohio-555, ¶ 6. "The purpose of a preliminary injunction is to preserve the status quo pending a resolution of the case on the merits." *Dimension Serv. Corp. v. First Colonial Ins. Co.*, 10th Dist. No. 14AP-368, 2014-Ohio-5108, ¶ 18. As such, a proceeding for a preliminary injunction is "ancillary to a pending action," *Columbus v. State*, 10th Dist. No. 22AP-676, 2023-Ohio-2858, ¶ 16, citing R.C. 2505.02(A)(3), and "lasts no longer than the pendency of the action." *Id.*

{¶ 31} The trial court's March 1, 2024 journal entry did not decide Casey and Fortis's motion for a preliminary injunction, which remained scheduled for a hearing before a magistrate on March 19, 2024. Nevertheless, Casey and Fortis argue that, by dismissing their claims under the Agent Agreement and the Assignment Agreement, the trial court effectively foreclosed their ability to obtain injunctive relief, and that the trial court's journal entry is therefore a final order under R.C. 2505.02(B)(4) and immediately appealable to the extent it denied that provisional remedy. Although we agree that the trial court's journal entry, in which the court decided that Casey and Fortis's claims under the Agent Agreement and Assignment Agreement fail as matter of law, precludes a preliminary injunction with respect to those agreements, we do not agree that the journal entry granted or denied a provisional remedy.

{¶ 32} Once the trial court determined that all claims under the Agent Agreement must be dismissed as a matter of law, there remained no basis for preliminary injunctive relief with respect to that agreement. As stated above, the goal of a preliminary injunction is to preserve the status quo pending a court's final determination of the matter. *Dimension Serv. Corp.* at ¶ 18. Indeed, the first factor a trial court must consider when deciding

whether a preliminary injunction is appropriate is whether the movant has a substantial likelihood of success on the merits. *Franks v. Rankin*, 10th Dist. No. 11AP-962, 2012-Ohio-1920, ¶ 28. A request for a preliminary injunctive relief presupposes a pending claim for relief on the merits. Once a court makes a final determination of the movant's claims, a motion for preliminary injunction becomes moot. *See Emanuel's LLC v. Restore Marietta, Inc.*, 4th Dist. No. 22CA6, 2023-Ohio-147, ¶ 17. The trial court's determination that Casey and Fortis could not maintain claims under the Agent Agreement and Assignment Agreement simply rendered their request for preliminary injunctive relief with respect to those agreements moot. It did not grant or deny a provisional remedy.

## III. CONCLUSION

{¶ 33} Because we conclude that the trial court's March 1, 2024 journal entry did not grant or deny a provisional remedy and was not a final order under R.C. 2505.02(B)(4), we dismiss this appeal for lack of jurisdiction, based on the lack of a final, appealable order.

*Appeal dismissed.*

BEATTY BLUNT and MENTEL, JJ., concur.